```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

WILLIAM ROBINSON,

                        Plaintiff,

        - vs -                    02-CV-6204T(F)

                                      Hon. Michael A. Telesca

EASTMAN KODAK COMPANY,

                        Defendant.

## DEFENDANT EASTMAN KODAK COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO CLARIFY THIS COURT'S CLASS CERTIFCATION ORDER AND TO AMEND THE CLASS NOTIFICATION

**NIXON PEABODY LLP**
Attorneys for Defendant
*EASTMAN KODAK COMPANY*
Clinton Square
P.O. Box 31051
Rochester, New York 14603
(585) 263-1000

Todd R. Shinaman, Esq.
    Of Counsel

## TABLE OF CONTENTS

Preliminary Statement ................................................................................................. 1

Argument ..................................................................................................................... 2

    Point I:    Plaintiff's Interpretation of the Court's Certification Order
                 Is Overbroad .................................................................................. 2

    Point II:   The Supporting Affidavits Submitted by Plaintiffs Clarify
                 That the Proposed Class Was Only Intended to Include
                 Those Employees Raising Comp Time Claims ........................... 4

    Point III:  The Class as Plaintiff Now Defines It Would Clearly
                 Be Improper .................................................................................. 6

    Point IV:  In Light of Plaintiffs' Recent Interpretation of the Court's
                 Order, the Notice to Class Must be Revised As It Contains
                 Ambiguous Language with Respect to the Scope of the Class ........... 11

Conclusion ................................................................................................................ 12

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Allen v. Pataki, 1996 U.S. Dist. LEXIS 19866 (N.D.N.Y. 1996) .................................................. 10

In re Drexel Burnham Lambert Group, 960 F.2d 285 (2d Cir. 1992) .................................... 10, 11

Freeman v. Wal-Mart Stores, Inc., 256 F. Supp. 2d 941 (D. Ark. 2003) ........................................ 7

Haynes v. Singer Co., Inc., 696 F.2d 884 (11th Cir. 1983) ............................................................ 7

Marisol A. ex. Re. Forbes v. Giuliani, 126 F.3d 372 (2d Cir. 1997) ............................................ 10

Marsh v. Butler Co. School Sys., 242 F. Supp. 2d 1086 (D. Ala 2003) .......................................... 7

Martin v. Shell Oil Co., 198 F.R.D. 580 (D. Conn. 2000) .............................................................. 9

Pecere v. Empire Blue Cross & Blue Shield, 194 F.R.D. 66 (E.D.N.Y. 2000) .............................. 9

Sheffield v. Orious Corp., 2002 U.S. Dist. LEXIS 23285 (D. Or. 2002) ....................................... 7

White v. Osmose, 204 F. Supp. 2d 1309 (M.D. Ala. 2002) ............................................................ 7

**FEDERAL STATUTES**

29 U.S.C. §216(b) ........................................................................................................................ 7, 9

Fed. R. Civ. P. 23 .......................................................................................................................... 10

**PRELIMINARY STATEMENT**

Defendant Eastman Kodak Company, (hereinafter "Kodak"), submits this Memorandum of Law in support of its motion to clarify the Class Certification Order of this Court dated July 18, 2003 (the "Certification Order") and to amend the class notice which now contains language upon which plaintiff relies to assert that Subclass A encompasses a class far broader than that which was certified by this Court.

As explained in Point I, *infra*, the Decision and Order of this Court dated April 9, 2003 (the "April Order") pertaining to class certification issues clearly contemplated that the overtime claims of Subclass A would be limited in scope to those claims involving compensatory time. Moreover, as explained in Point II, *infra*, the supporting affidavits offered by plaintiffs specifically allege overtime violations involving only compensatory time issues, clearly indicating plaintiffs' intent that the instant action should encompass only those employees who may have been affected by Kodak's use of compensatory time.

Recently plaintiffs' counsel has informed Kodak that they view Subclass A as encompassing virtually all claims of any kind involving Kodak's alleged failure to pay overtime. This issue has arisen in two contexts. On or about November 21, 2003, the firm of Dolin Thomas & Solomon LLP filed a class action complaint on behalf of Audry Malcolm and other employees similarly situated, alleging that various employees performing technical writing work were misclassified as exempt and, therefore, unlawfully denied the payment of overtime. Malcolm v. Eastman Kodak Company, 03-CV-6589T(P). Shinaman Aff. ¶ 2, Exhibit A. Mark Hannabury, one of plaintiff's counsel in the instant case, informed defense counsel that the plaintiffs' claims in the Malcolm case are subsumed within Subclass A of the Robinson case. In addition, Kodak recently identified and addressed an issue in its Regional Transport Department involving payment of employees for attending certain voluntary lunch meetings. Mr. Hannabury now argues that Kodak's actions were improper because they involved inappropriate communications with members of Subclass A, even though compensatory time was not utilized in that department.

It is Kodak's position that Mr. Hannabury's recent interpretation of the Certification Order clearly exceeds the bounds of that order and ignores the reasoning of the April Order. Mr. Hannabury attempts to establish a class which far exceeds the scope of the class certified by this Court. Additionally, Mr. Hannabury's recent interpretation of the Certification Order creates doubt as to whether the class notice accurately reflects the intended scope of the class and suggests that the notice should be revised accordingly.

## ARGUMENT

### POINT I

#### *PLAINTIFF'S INTERPRETATION OF THE COURT'S CERTIFICATION ORDER IS OVERBROAD*

The Certification Order states:

> Subclass A is comprised of all persons who worked for Eastman Kodak Company as non-exempt employees in New York State after April 11, 1996 to entry of judgment in this case and who worked overtime but were not promptly paid in cash or cash equivalent for overtime worked.

Shinaman Aff. ¶ 3, Exhibit B at p. 1. Plaintiff now argues that Subclass A encompasses all claims for overtime. The findings and conclusions contained in the April Order, however, make it clear that the April Order intended Subclass A to consist only of those employees who raised allegations involving the use of compensatory time. The introduction of the April Order accurately states that plaintiff alleges "on behalf of himself and others similarly situated that Kodak failed to pay him and others cash or cash equivalent for non-regularly scheduled overtime, but instead permitted the Class members to accumulate compensatory time off, in violation of [the FLSA and the Minimum Wage Act]." Shinaman Aff. ¶ 4, Exhibit C. (Emphasis added). In considering whether the proposed class members met the commonality requirements for class certification, this Court stated, "[t]he predominant issues in this action involve Kodak's failure to pay overtime payments to employees choosing to be reimbursed through comp time, and the inclusion of performance pay on the regular rate by which overtime compensation was to be calculated." (Id. at p. 6). Finally, the Court concluded that:

> [s]ubclass A is comprised of all persons who worked for defendant as non-exempt employees in New York State after April 11, 1996 to entry of judgment in this case and who worked overtime but <u>were not promptly paid in cash or cash equivalent for overtime worked</u>.

(<u>Id</u>. at pp. 7-8). (Emphasis added). Thus, the Court's April Order clearly reasoned that the scope of Subclass A would be limited to those employees raising overtime claims involving <u>compensatory time</u> issues. The Court's reasoning is further reflected in the Certification Order which accurately describes Subclass A as those employees who "worked overtime but were not promptly paid in cash or cash equivalent for overtime worked." Shinaman Aff. ¶ 3, Exhibit B at p. 1.

Plaintiff now relies on the following language from the previously approved notices to argue that the Court established a class encompassing virtually <u>all</u> claims of <u>any</u> kind involving Kodak's alleged failure to pay overtime: "[t]he plaintiffs are attempting to recover backpay for those Kodak Employees who worked overtime and either: (1) received 'comp time' instead of money in their paycheck, or (2) received no payment at all for overtime." (<u>Id</u>. at Ex. B). Mr. Hannabury's interpretation completely ignores the reasoning of this Court's April Order which clearly expresses the intent to establish a Subclass consisting <u>only</u> of those employees raising compensatory time issues. Subpart (2) of the above description would apply to such employees who allegedly did not get paid for overtime because they were not allowed to use their comp time. This language was not intended to include all employees who allege unpaid overtime for any reason.

Moreover, Mr. Hannabury's recent position directly conflicts with his own explanation of Subclass A found on a website which he maintains relating to this case. The website explains:

> Q. Who is covered by this Subclass?
>
> A. This Subclass is all non-exempt Kodak employees who worked any overtime (more than 40 hrs. in one week) in New York State and who were not paid time and a half in cash, <u>but instead got comp time</u>.

Shinaman Aff. ¶ 5, Exhibit D at p. 5. (Emphasis added). Thus, it would appear that Mr. Hannabury's own understanding of the scope of Subclass A is that it encompasses <u>only</u> those overtime claims that relate to compensatory time.

## POINT II

### *THE SUPPORTING AFFIDAVITS SUBMITTED BY PLAINTIFFS CLARIFY THAT THE PROPOSED CLASS WAS ONLY INTENDED TO INCLUDE THOSE EMPLOYEES RAISING COMP TIME CLAIMS.*

In its April Order the Court carefully considered whether or not plaintiffs met the numerosity, commonality, typicality and adequacy requirements of Federal Rule of Civil Procedure 23. Specifically, the Court found that plaintiffs established Rule 23 typicality requirements "because each representative alleges treatment by Kodak identical to that by which his or her class or Subclass is characterized in the form of a sworn affidavit..." Shinaman Aff. ¶ 4, Exhibit C at p. 6. Indeed, the affidavits submitted by plaintiffs with respect to Subclass A focus entirely on comp time issues and were clearly drafted with an eye toward intentionally focusing this litigation on issues of compensatory time off. For example, the amended affidavit of Mary Joy Josefozicz states:

> I worked many overtime hours in the Department for which I did not get properly paid. For some of those hours I received <u>comp time</u>. . . The Department wanted us to use <u>comp time</u>...[a]ccordingly, I agreed with my supervisor to take about half of my overtime in <u>comp time</u>...[t]he <u>comp time</u> that I was permitted to take in lieu of cash was straight time, not time and one-half...Kodak's assertion in this lawsuit that people could use accumulated <u>comp time</u> whenever they wanted to use it is not true...[w]e could only use <u>comp time</u> when Kodak was able to spare us. During busy times...we could not use accumulated <u>comp time</u>...from time to time there was a complete prohibition from using <u>comp time</u> at all...[m]y supervisor told me that I could not use <u>comp time</u> because it would make it appear that we were on flextime...I had large amounts of accumulated <u>comp time</u> that I was never able to take...[t]here were 11 people in the department and we all used <u>comp time</u> instead of being paid cash for overtime.

Shinaman Aff. ¶ 6, Exhibit E. (Emphasis added). Similarly, the amended affidavit of Emmett Peters states:

> During the last six years, our Department has used <u>comp time</u> extensively. . .the <u>comp time</u> policy has changed several times...[a]t times we have been told that <u>comp time</u> was mandatory. At other times we have been told that <u>comp time</u> was optional...[f]or a long period of time we were permitted to accumulate <u>comp time</u>...Kodak's statement that employees had unfettered discretion to use <u>comp</u>

> time whenever they wanted to after they accumulated it is untrue. We had to arrange for someone to cover for us before we were permitted to take the comp time off...

Shinaman Aff. ¶ 7, Exhibit F. (Emphasis added). The affidavit of William Robinson states:

> [t]he defendant allowed employees, including myself, to accrue so-called "comp time"...[s]ometimes the comp time was recorded in a log book. At other times, no record whatever was made of the accrued comp time...[i]t is my belief that Kodak's use of the com time set off has been widespread...Kodak has utilized the comp time set off for me personally within the last three years...

Shinaman Aff. ¶ 8, Exhibit G. (Emphasis added). Indeed, each and every one of the affidavits submitted by plaintiffs raised issues concerning the use of compensatory time. The affidavits did not raise issues with respect to any other situation involving the improper calculation of hours worked. See Affidavit of Willa Dean Williams, Shinaman Aff. ¶ 9, Exhibit H; Affidavit of Gerleen Beaty, Shinaman Aff. ¶ 10, Exhibit I; Affidavit of Scott R. Doran, Shinaman Aff. ¶ 11, Exhibit J; Affidavit of Michelle M. Cook, Shinaman Aff. ¶ 12, Exhibit K; Affidavit of Frankie M. Washington, Shinaman Aff. ¶ 13, Exhibit L ; Affidavit of Susan Klueber, Shinaman Aff. ¶ 14, Exhibit M. Moreover, plaintiffs' own papers indicate their intent to focus this litigation on issues concerning comp time. For example, page four of plaintiffs' Memorandum of Law filed with this Court on August 12, 2002 states, "[a]s to Subclass A, the common issue which predominates over the individual issues is whether the defendant denied the purported class members prompt payment of overtime in contravention of law by virtue of the defendant's comp time policy." (Emphasis added). That same Memorandum of Law requested that the Court grant plaintiffs' motion for summary judgment on the grounds that "[d]efendant's use of comp time was illegal...[t]he comp time violation was willful...Kodak is not entitled to reduce its liability with used comp time..." Additionally, plaintiffs' Reply Memorandum of Law filed with this Court on September 16, 2002 focuses entirely on comp time issues and liberally cites the affidavits of Beaty, Doran, Josefozicz, Klueber and Peters for the proposition that "comp time practice was very much encouraged all throughout Kodak's facilities in the Rochester, New York area."

In their Second Amended Complaint, plaintiffs amended their previous Complaint by making broader assertions of claims relating to a general "policy to underpay employees for overtime" and the maintenance of "falsified time records." Shinaman Aff. ¶ 15, Exhibit N at ¶ 9. However, the new allegations continued to be raised in the context of compensatory time, "Kodak also maintained false time records as to comp time. Those time records show that Plaintiffs were working, when they were actually using comp time." (Id. at ¶ 23) (Emphasis added). As set forth above, all of plaintiffs' supporting affidavits relate to issues involving comp time, and the affidavits make clear that the class proposed by plaintiffs was only meant to include those employees who had been affected by Kodak's use of compensatory time. Plaintiffs may argue that the amended affidavit of Mary Joy Josefozicz offers support for their more general assertions involving a general policy to underpay employees for overtime. However, that affidavit merely states, "I worked many overtime hours in the Department for which I did not get properly paid. For some of those hours I received comp time." Shinaman Aff. ¶ 6, Exhibit E at ¶ 2. Thus, plaintiffs alleged support for the more general allegations of "unpaid overtime" is directly coupled with allegations relating to comp time. The presumption is that any allegations of Subclass A relating to overtime will directly relate to Kodak's comp time policy. Plaintiffs have offered no additional evidence whatsoever through supporting affidavits or otherwise which would support their position that Subclass A encompasses claimants who raise overtime issues unrelated to comp time.

Indeed, in certifying the class the Court considered the affidavits submitted by plaintiffs which all focus on comp time issues. Accordingly, the Court clearly certified Subclass A only with regard to those employees whose claims relate to compensatory time off.

## POINT III

### *THE CLASS AS PLAINTIFF NOW DEFINES IT WOULD CLEARLY BE IMPROPER.*

This Court would never have certified a class as broad as plaintiffs now define it. In general, the Fair Labor Standards Act permits an employee to bring a collective action on behalf

of himself and other "similarly situated" employees. See 29 U.S. C. §216(b). Admittedly, the employee representative only needs to demonstrate that his position is similar, but not identical to that of the class. See Freeman v. Wal-Mart Stores, Inc., 256 F. Supp.2d 941. 945 (D. Ark. 2003). "However, unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." Id. (citing Haynes v. Singer Co., Inc., 696 F.2d 884, 887 (11th Cir. 1983). The Freeman court explained, "it is incumbent upon Plaintiff to propose a class that is sufficiently defined and manageable from the outset. It would be a waste of the Court's and the litigants' time and resources to notify a large and diverse class only to later determine...the members are not similarly situated." Id. If the Certification Order in this case was meant to create a class consisting of any and all claims for unpaid overtime, this raises the possibility that the claims of various class members will be factually unrelated to one another and will not be the result of a common plan or policy. Indeed, courts have explained that while plaintiffs are not required to point to a common plan or policy, they must make "some rudimentary showing of commonality between the basis for his claims and that of the potential claims of the proposed class...because without such a requirement, it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a case for ready abuse." Marsh v. Butler Co. School Sys., 242 F. Supp. 2d 1086, 1093 (D. Ala. 2003) (citing White v. Osmose, 204 F. Supp. 2d 1309 (M.D. Ala. (2002)); Sheffield v. Orious Corp., 2002 U.S. Dist. LEXIS 23285 (D. Or.)). The Marsh court went on to explain,

> [t]o conclude otherwise, that is, to conclude that it is enough to demonstrate that employees are similarly situated simply to say that they claim violations of the law by the same employer, is to conclude that any time an employer had two or more employees who allegedly were not being paid the overtime they claimed they were due, the employees would be similarly situated and be allowed to proceed with a collective action.

Marsh at 1094. If Subclass A is to consist of any and all claims for unpaid overtime, then plaintiffs cannot be said to be "similarly situated" as their only commonality is that they allege a violation of the same statute. See Freeman at 945 (class certification improper where employee representative claims that the proposed class is similarly situated simply because

- 8 -

they claim violations of the overtime provisions of the FLSA by the same employer). Indeed, the potential plaintiffs which Mr. Hannabury claims should be encompassed in Subclass A are not at all "similarly situated" to one another. For example, Mr. Hannabury's recent contention that the scope of the certified class in the instant action subsumes the class in Malcolm v. Eastman Kodak Company, 03-CV-6589T(P) is puzzling. In Malcolm, it appears as if plaintiffs are challenging their exempt status under the FLSA and alleging that Kodak has failed to pay overtime in violation of the Act. Shinaman Aff. ¶ 2, Exhibit A. Presumably, the Malcolm plaintiffs will raise issues concerning their specific job duties and whether or not Kodak improperly classified them as exempt employees. The Malcolm plaintiffs have not asserted any claims relating to compensatory time, and the Robinson plaintiffs are not asserting claims relating to improper classification. Therefore, it is impossible to argue that the potential plaintiffs in Malcolm are similarly situated to the plaintiffs in Robinson.

Further, Mr. Hannabury takes the general position that in addition to encompassing comp time claims, Subclass A subsumes all overtime claims relating to "hours worked." For example, Mr. Hannabury recently became aware that Kodak made payments to employees in the Regional Transport Department for attending certain voluntary lunch meetings. He now alleges that Kodak's dealings with those employees was improper in that the employees were members of Subclass A. Mr. Hannabury's position is unreasonable in that compensatory time has never been utilized in the Regional Transport Department and any possible claim that employees in that department would have for unpaid overtime would be wholly unrelated to the use of compensatory time. Mr. Hannabury's position, taken to its logical conclusion would expand Subclass A to include any Kodak employee raising any allegation of unpaid overtime. For example, in addition to allegations relating to the lunch time meetings in the Regional Transport Department, Mr. Hannabury would also take the position that any other claim for overtime relating to hours worked, such as claims for unpaid travel time or unpaid set-up time, would be subsumed within Subclass A. This far-reaching position, if accepted, would require the Court to make specific factual inquiries into each and every distinct allegation. Such

inquiry would not bear any resemblance to the Court's inquiry into Kodak's use of compensatory time which is the focus of the instant litigation. Again, certification of such a class would be inappropriate under Federal Rule of Civil Procedure 23. Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." As one court has explained, "[t]he predominance criterion is, in effect, a stricter version of the commonality requirement of Rule 23(a)(2). If common issues do not predominate over individual issues, a class action is not a superior method for fair and efficient adjudication." Pecere v. Empire Blue Cross & Blue Shield, 194 F.R.D. 66, 72 (E.D.N.Y. 2000). Here, if Subclass A is expanded to include any and all claims for overtime there will necessarily be individual inquiries regarding the specific circumstances of each claim. Consequently, a class action encompassing any and all claims for unpaid overtime would not be superior to other methods for the fair and efficient adjudication of such claims. Fed. R. Civ. Pro. 23(b)(3).

Not only would Mr. Hannabury's interpretation of the Certification Order create class of individuals not similarly situated for purposes of 29 U.S.C. 216(b), but the class would also fail to meet the requirements set forth in Federal Rule of Civil Procedure 23. Federal Rule of Civil Procedure 23, sets forth four requirements for class certification: (1) numerosity of plaintiffs; (2) commonality of issues; (3) typicality of parties; and (4) adequacy of representation. Plaintiffs "bear the burden of establishing each requirement for class certification. In doing so, they cannot rely solely on the allegations of the complaint, but must provide sufficient information on which the court can make a determination." Martin v. Shell Oil Co., 198 F.R.D. 580, 590 (D. Conn. 2000) (citing, Pecere v. Empire Blue Cross & Blue Shield, 194 F.R.D. 66, 69 (E.D.N.Y. 2000)). As explained in Point II supra, plaintiffs conclude that Subclass A should encompass any and all claims for overtime, yet have not provided any affidavits in support of this position, nor have plaintiffs offered any supporting documentation which supports the appropriateness of an overly broad class certification. Under the circumstances, plaintiffs' interpretation of the

Certification Order as encompassing any and all claims for unpaid overtime is simply incorrect. See, Allen v. Pataki, 1996 U.S. Dist. LEXIS 19866 (N.D.N.Y. 1996), adopted by, 1996 U.S. Dist. LEXIS 19309 (N.D.N.Y. 1996)(plaintiffs' request for class certification was denied because the plaintiff "merely [stated] in conclusory fashion and without any supporting documentation, that the instant action [met] the prerequisites of Fed. R. Civ. P. 23. No evidence such as affidavits or other documentation [had] been provided … in support of [the] request ….").

Moreover, if the class certified in the instant action is meant to include any and all claims for unpaid overtime, the adequacy of Robinson as the named representative is called into question. Generally, the representative parties must "fairly and adequately protect the interests of the class." See Fed. R. Civ. P. Rule 23 (a)(4). Specifically, "[p]laintiffs must also demonstrate that there is no conflict of interest between the named plaintiffs and other members of the plaintiff class." Marisol A. ex. Re. Forbes v. Giuliani, 126 F.3d 372, 378 (2d Cir. 1997) (citing In re Drexel Burnham Lambert Group, 960 F.2d 285, 291 (2d Cir. 1992)). As explained above, it is difficult to determine how Robinson, a non-exempt employee alleging claims involving compensatory time could adequately represent the interests of the Malcolm plaintiffs who allege that they were improperly classified as non-exempt, but raise no allegations involving the use of compensatory time.

Mr. Hannabury's position that the Certification Order encompasses plaintiffs who raise any and all claims for overtime is unreasonable. The claims of such plaintiffs are neither "similarly situated" to nor adequately represented by the instant litigation. Thus, the Certification Order clearly intended that the overtime claims of Subclass A would be limited in scope to those claims involving the use of compensatory time.

### POINT IV

### *IN LIGHT OF PLAINTIFFS' RECENT INTERPRETATION OF THE COURT'S ORDER, THE NOTICE TO CLASS MUST BE REVISED AS IT CONTAINS AMBIGUOUS LANGUAGE WITH RESPECT TO THE SCOPE OF THE CLASS*

Due to Mr. Hannabury's recent interpretation of the Certification Order, it is clear that the parties disagree as to the scope of the class certified by that order. Similarly, Mr. Hannabury's position creates doubt as to whether the proposed class notice adequately describes the scope of the certified class. Under the heading "Description of the Lawsuit—What This Case is About," the proposed notice states, "[t]he plaintiffs are attempting to recover backpay for those Kodak Employees who worked overtime and either: (1) received 'comp time' instead of money in their paycheck, or (2) received no payment at all for overtime." Shinaman Aff. ¶ 3, Exhibit B at Ex. B. A person unfamiliar with the case could, in fact, believe that unpaid overtime even unrelated to the use of comp time is covered. The notice should clarify that the instant litigation does not encompass any and all claims for overtime, but focuses only on those claims for overtime which relate to compensatory time off. Similarly, under the heading "Your Right to Participate in this Lawsuit", the proposed notice explains:

> You may participate in this lawsuit if you:
> 1. Worked for Eastman Kodak Company as a non-exempt employee in New York State after April 11, 1996 to present time, and
> 2. Worked overtime but were not paid money in your paycheck for overtime worked.
>
> You may participate in this lawsuit even if you agreed to accept comp time instead of getting paid overtime.

(Id.). The above language was clearly intended to convey that the instant lawsuit is limited to overtime claims which involve the use of compensatory time but also could be construed as encompassing all claims for unpaid overtime. The notice should be more narrowly drafted in order to convey to potential class members that the lawsuit is limited to those claims involving compensatory time. Kodak suggests that the notice be revised so that potential class members are appropriately informed of the scope of the class. Under the heading "Description of the

Lawsuit—What This Case is About," the notice should state, "[t]he plaintiffs are attempting to recover backpay for those Kodak Employees who worked overtime and were not promptly paid money in their paycheck because of a comp time policy or practice." Similarly, under the heading "Your Right to Participate in this Lawsuit", the notice should state:

> You may participate in this lawsuit if you:
>
> 1. Worked for Eastman Kodak Company as a non-exempt employee in New York State after April 11, 1996 to present time, and
>
> 2. Worked overtime but were not paid money in your paycheck for overtime worked due to a comp time policy or practice.
>
> You may participate in this lawsuit even if you agreed to accept comp time instead of getting paid overtime.

## CONCLUSION

For all of the foregoing reasons, Kodak seeks an Order clarifying the scope of the class established by the Court's Certification Order and requiring plaintiffs' to amend the proposed notice to class accordingly.

Dated: January 16, 2004

**NIXON PEABODY LLP**
Attorneys for Defendant
*Eastman Kodak Company*

By: _____
Todd R. Shinaman, Esq.

Clinton Square
P.O. Box 31051
Rochester, NY 14603
(585) 263-1000

TO: Charles W. Rogers, Esq.
**ROGERS & PUCHER**
45 Exchange Street, Suite 825
Rochester, NY 14614