UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM ROBINSON, et al.,
*On behalf of himself and all other employees*
 *similarly situated*
                                        Plaintiffs,
        v.

THE EASTMAN KODAK COMPANY,

                        Defendants

_____

**PLAINTIFFS' MEMORANDA IN
SUPPORT OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE**

02-CV-6204T(F)

Hon. Michael A. Telesca

TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. 1
**TABLE OF AUTHORITIES** ...................................................................... 2
        § 663 (1) of the New York Labor Law                    9 ...................... 2
        **I.  INTRODUCTION AND SUMMARY OF AGREEMENT** ..................... 5
        **II. PROCEDURAL BACKGROUND AND CLAIMS IN DISPUTE** ............. 7
                **A.   Comp Time And Unpaid Overtime Claims-Subclass A(1)** .............. 9
                **B.   Incorrect Regular Rate Claims –Subclass B** ........................... 10
        **III THE NEGOTIATIONS AND THE SETTLEMENT** ............................. 11
                **A. Negotiations** .............................................................. 11
                **B. Summary of Settlement** ................................................. 12
                **C. Subclass A Recovery** ................................................... 13
                        **1. Fund 1** .................................................................... 14
                        **2. Fund 2** ................................................................... 15
                        **3. Declaratory Relief** .................................................. 16
                **E. Additional Provisions Of The Settlement**........................... 17
                **F. Mailing**.................................................................... 18
                **G. The Claims Process**.................................................... 19
                **H. Results of the Mailing** ............................................... 20
        **IV. ARGUMENT** ................................................................... 21
                **A. The Court Has Already Granted Preliminary Approval** ..................... 21
                **B. All of the Pertinent Factors Counsel in Favor of Granting Final
                Approval** ........................................................................ 22
                        **1. The Complexity, Expense And Likely Duration Of The Litigation** ... 24
                        **3. The Stage Of The Proceedings And The Amount Of Discovery
                        Completed;**................................................................ 27
                        **4. The Risks Of Establishing Liability and Damages** .............................. 28
                                **a. Risks Of Establishing Liability Subclass A** ........................... 29
                                **b. Risks Of Establishing Liability Subclass B** ........................... 30
                        **5. The Risks of Establishing Damages**................................... 32

        **6. The Risks Of Maintaining The Class Action Through The Trial** ...... 32
        **7. The Ability Of The Defendant To Withstand A Greater Judgment** .. 34
            **8. The Range Of Reasonableness Of The Settlement Fund In Light Of
            The Best Possible Recovery** ..................................................... 34
            **9. The Range Of Reasonableness Of The Settlement Fund In Light Of
            All The Attendant Risks Of Litigation.** ............................................. 36
        **C. The Negotiation Process by Which the Settlement Was Reached Also
        Supports Final Trial Court Approval** ........................................ 36
        **D. The Notice of Settlement Was Adequate and Satisfied Due Process
        Requirements.** ......................................................................... 37
        **E. The Court Should Approve The Proposed Plan Of Allocation** .......... 39
    **V. THE ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS ARE
    FAIR AND REASONABLE AND SHOULD BE APPROVED** .................... 40
        **A.  INTRODUCTION** .................................................................... 40
            **1. Relevant Factors Justify the Award of a 28% Fee In this Case** ......... 43
                **a.  The Time and Labor Involved** ......................................... 44
                **b.  The Magnitude and Complexities of the Litigation** ...................... 46
                **c    The Quality of Representation.** ...................................... 49
                **d. The Requested Fee In Relation To The Settlement.** ........................ 50
                **e. Public Policy Considerations** ............................................. 52
            **2. The Attorneys Fees Are Fair And Reasonable Irrespective Of How
            Much Of The Funds Are Actually Claimed** ........................... 54
        **B. PETITIONERS' EXPENSES ARE REASONABLE AND WERE
        NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED**
        ............................................................................................................ 56
        **C. THE INCENTIVE AWARDS ARE APPROPRIATE AND
        REASONABLE** ............................................................................ 56
        **D. CONCLUSION** ........................................................................ 57

## TABLE OF AUTHORITIES

### Statutes

§ 663 (1) of the New York Labor Law                                    9
28 U.S.C. Sections 1332(d), 1453, and 1711-1715 ........................................ 10
29 U.S.C. § 207 ................................................................................. 12,13
29 USC § 216(B) ............................................................................... 9,12

### Other Authorities

Manual for Complex Litigation (Third) § 30.41 (1995) .................................. 24

### Rules

F.R.Civ.P. Rule 23 ............................................................... 11,12,23

### Regulations

29 C.F.R. § 778.208 ........................................................................................... 13

29 C.F.R. § 778.211 (c)........................................................................................ 14

## Cases

*Arenson v. Board of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974) ....................................... 49

*Becher v. Long Island Lighting Company*, 64 F. Supp. 2d 174 (E.D.N.Y. 1999) .. 22,23,50

*Blum v. Stenson*, 465 U.S. 886, 900, 104 S. Ct. 1541 (1984) ........................................... 49

*Boeing Co. v. Van Gernert*, 444 U.S. 472, 478, 100 S. Ct. 745 (1980)....................... 50,54

*Brown v. Phillips Petroleum Co*., 838 F.2d 451, 454-55 (10th Cir.) ................................. 43

*Brunson v. The City of New York*, 2000 WL 1876910, at  (S.D.N.Y. Dec. 22, 2000)...... 47

*Christensen v. Harris County*, 529 U.S. 576 (2000)...................................................... 10

*City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974)........... 22,36,46

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir 1992) ..................... 38

*Cohen v. Apache Corp*., 1993 WL 126560 (S.D.N.Y. April 21, 1993)........................... 50

*Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) ............................................. 45

*Denney v. Jenkens & Gilchrist*, 2004 U.S. Dist. LEXIS 26041, No. 03 Civ. 5460, 2005 WL
    388562, at *31 n.248 (S.D.N.Y. Feb. 18, 2005)....................................................... 55

*Dolgow v. Anderson, 43 F.R.D. 472, 487 (E.D.N.Y. 1968)* ............................................. 52

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140 (1974)...................... 36

*Eltman v.  Grandma Lee's Inc*., 1986 WL 53400 at *9 (E.D.N.Y. May 28, 1986) .......... 51

*Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 202 Cal.
    Rptr. 389 (1984)................................................................................................. 45

*Goldberger v. Integrated Resources, Inc*., 209 F.3d 43, 50 (2d Cir. 2000).................... 42

*Grace v. Ludwig, 484 F.2d 1262, 1267 (2d Cir. 1973)* ................................................. 52

*Grant v. Bethlehem Steel Corp*., 823 F.2d 20, 23 (2d Cir. 1987) ................................... 27

*Greene v. Emersons, Ltd.*, 1987 WL 11558 (S.D.N.Y. May 20, 1987)........................... 51

*Haber v. American Corp., supra*, 378 F.2d 854; ............................................................ 11

*Handschu v. Special Services Div*., 787 F.2d 828, 832-33 ............................................ 36

*Hanlon v. Chrysler Corp*. 150 F.3d 1011, 1026 (9th Cir. 1998................................... 21,53

*In re Allstar Inns Sec. Litig*., 1991 WL 352491 (S.D.N.Y. Nov. 20, 1991) .................... 51

*In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ... 25

*In re Cendant Corp. Sec. Litig*., 109 F. Supp. 2d at 262................................................ 48

*In re Crazy Eddie Sec. Litig*., 824 F. Supp. 320 (E.D.N.Y. 1993)................................. 50

*In re Dime Savings*, 1994 WL 60884 (E.D.N.Y. Feb. 23, 1994)................................ 44,55

*In re GAIC Pick-Up Truck Fuel Tank Prods. Liab. Litig*., 55 F.3d 768, 784 (3d Cir. 1995)
    .......................................................................................................... 23,33

*In re Gulf Oil/Cities Service Tender Offer Litig*., 142 F.R.D. 588, 597 (S.D.N.Y. 1992) 50

*In re In-Store Adver. Sec. Litig*., 1996 U.S. Dist. Lexis 4281 (S.D.N.Y. April 4, 1996) . 50

*In re King Resources Co. Securities Litigation*, 420 F. Supp. 610 (D. Colo. 1976)......... 49

*In re MicroStrategy Inc. Sec. Litig*., 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) ............ 38

*In re NASDAQ Market-Makers Antitrust Litig*., 187 F.R.D. 465 (S.D.N.Y. 1998).......... 50

*In re New York City Mun. Sec. Litig*., 1984 WL 2411, at *2 (S.D.N.Y. Mar. 28, 1984).. 51

*In re Oracle Sec. Litig*., 1994 U.S. Dist. LEXIS 21593, *3, No. C-90-0931-VRW (N.D.
    Cal. Jun. 18, 1994) ............................................................................................. 39

*In re Painewebber Ltd.  Partnerships Litig*., 171 F.R.D. 104, 122 (S.D.N.Y. 1997).. 23,34

*In re Presidential Life Securities*, 857 F.Supp. 331, 335 (S.D.N.Y. 1994) ..................... 43

In re *Prudential Ins. Co. of Am. Sales Practice Litig*., 148 F.3d 283, 321 (3d Cir. 1998))
.................................................................................................................... 24,44,48
*In re RJR Nabisco, Inc. Sec. Litig*., [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) P
96,984, at 94,267 (S.D.N.Y. 1992) ............................................................... 45
*In re SLM Intl. Inc. Sec. Litig., Master File No*. 94-Civ. 3327 (RLC) (S.D.N.Y. 1996).. 50
*In re Sumitomo Copper Litigation*, 74 F.Supp.2d 393, 396 (S.D.N.Y. 1999), ........... 44,50
*In re Warner Communications Sec. Litig*., 618 F. Supp. 735, 741 (S.D.N.Y. 1985) ....... 27
*In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291 (9th
Cir. 1994) ................................................................................................. 44
*In. re Equity Funding Corp. Sec. Litig*., 438 F. Supp. 1303, 1337 -14-(C.D. Cal. 1977). 49
*Ingram v. The Coca-Cola Company*, 200 F.R.D. 685 (N.D. Ga. 2001) ...................... 23,50
*J.I. Case Co. v. Borak*, 377 U.S. 426, (1964) ..................................................... 52
*John Vaszlavk, et al. v. Storage Technology Corporation,* 2000 WL 1268824 (D. Colo.
Mar. 9, 2000)............................................................................................. 51
*Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975)........................... 43
*Krell v. Prudential Insurance Co. of America Litig.*, 525 U.S. 1114, 119 S. Ct. 890 (1999)
................................................................................................................... 24
*Letouzel v. Eastman Kodak* Co. 05-cv-6464  (W.D.N.Y. 2005)..................................... 26
*Mandujano v. Basic Vegetable Prods., Inc*., 541 F.2d 832, 837 (9th Cir. 1976)............. 25
*Marshall v.  Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977)........................ 38
*McLendon v. Continental Group, Inc*., 872 F. Supp. 142, 163 (D.N.J. 1994)................. 51
*Michels v. Phoenix Home Life Mut. Ins. Co.*, 1997 N.Y. Misc. LEXIS 171  (Albany Cty.
1997) ....................................................................................................... 45
*Niles-Bement-Pond Company*, 97 N.L.R.B. 165, 167 (1951).......................................... 11
*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985), ......................................... 52
*Reich v. SNET Co*  892 F. Supp. 389 (D.C.Ct. 1995) ....................................................... 29
*Roberts v. Texaco, Inc*., 979 F. Supp. 185 (S.D.N.Y. 1997)............................................. 44
*Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999)......................................... 49
*Sheppard v. Consolidated Edison Company of New York*, 2002 U.S. Dist. LEXIS
16314, 2002 WL 2003206 * 3 (E.D.N.Y. Aug. 1, 2002) ......................................... 22
*In re Sumitomo Copper Litig*., 74 F. Supp. 2d 393 at 399 (SDNY 1999) .............. 44,51,52
*Swedish Hosp. Corp. v.  Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993) ............................ 50
*Vizcaino v. Microsoft Corporation*, 290 F. 3d 1043 (9th Cir. 2002) ............................... 50
*Walling v. Harnischfeger Cor*p., 325 U.S. 427, (1945) ..................................................... 11
*Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999)......................... 54
*Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ............................................ 22,35
*Weiss v. Mercedes-Benz of North America, Inc*., 899 F. Supp. 1297, 1995 U.S. Dist.
LEXIS 14708 (D.N.J. May 11, 1995)............................................................... 44
*White v. NFL*, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993) ............................................ 39
*Willson v. New York Life Ins. Co*., 1995 N.Y. Misc. LEXIS 652 ..................................... 44

## I.  INTRODUCTION AND SUMMARY OF AGREEMENT

Plaintiffs' counsel,  the Law Offices of Charles W. Rogers, Esq., (Petitioners) pursuant to Federal Rule of Civil Procedure 23(e), and on behalf of Plaintiffs William Robinson and Mary Joy Josefozicz (Subclass A(1) and Emmett Peters (Subclass B) ("Plaintiffs"), respectfully submit this memorandum of law in support of the Petitioner's request that this Court (a) grant final approval for the  proposed Class Action Settlement Agreement And Release,  (Settlement Agreement) (attached to Affidavit of Mark Hannabury, sworn to October 16, 2006 submitted herewith , as Exhibit A) and (b) enter the proposed judgment accordingly and (c) retain jurisdiction over the matter for the purposes of overseeing the settlement and resolving issues pertaining to the remaining proposed Subclass A 2.

Through their vigorous efforts, Petitioners have achieved a settlement that they believe is excellent and merits Court approval. The proposed settlement consists primarily of a cash benefit of $13,925,000 which shall fund two settlement classes from which class members may make claims for unpaid and underpaid overtime wages. In addition, the Settlement Agreement provides for, *inter alia*, the administration of all claims, declaratory relief that the parties shall stipulate that Kodak will maintain a process by which employees may check time records reflecting the number of hours worked each work week that will be utilized in determining their pay. Kodak will also continue its policy, implemented in July, 2002, of prohibiting the use of compensatory time unless there is a change in the law expressly permitting its use. The Settlement Agreement also provides for the payment from the settlement amount of $4 million to account for both attorney's fees and Petitioners' expenses.

Plaintiff William Robinson ("Robinson"), a former Kodak employee, brought this action pursuant to Section 216(b) of the Fair Labor Standards Act ("ELSA"), codified at 29 U.S.C. § 2l6 b), and § 663 (1) of the New York Labor Law ("Minimum Wage Act"), alleging on behalf of himself and all others similarly situated that Kodak failed to pay him and others cash or cash equivalent for non-regularly scheduled overtime, but instead permitted the Class Members to accumulate compensatory time off, in violation of those statutes and alleging that they were entitled to unpaid overtime wages under state and federal law for the six years prior to the filing of this suit.  The Plaintiff alleged that nonexempt employees were underpaid for overtime in a number of ways.  Subclass A comprises individuals who allege that they worked more than 40 hours in a week and either received comp time rather than overtime pay or worked for altogether uncompensated overtime. Subclass B comprises plaintiffs who allege that Kodak improperly calculated the regular rate for people who received performance bonuses and worked overtime.

On July 18, 2003, the Court certified two Subclasses pertaining to these issues and authorized a Certification Mailing to nonexempt employees advising them of the certification of two Subclasses and giving employees the option to: 1. Opt in to the federal collective action, 2. opt out of the state class action, and/or 3. to provide voluntary information that they intended to be a part of the state class action.

The parties have engaged in prolonged and intensive discovery after which the parties engaged in settlement negotiations among themselves and later with the assistance of the Court. In February 2006, the parties  reached a proposed resolution regarding the total amount that Kodak would pay to result the lawsuit.  During the following months

the parties negotiated and worked out a plan of allocation of the proposed settlement amount.  Nevertheless, Kodak takes the position that its overtime practices were consistent with all applicable state and federal legal requirements and that the Settlement Agreement is not an admission of wrongdoing in any respect.

On July 26, 2006, the Court granted preliminary approval of the Settlement Agreement and authorized the mailing of the proposed Class Action Settlement Notices, (Settlement Notices); approved the appointment of a special master, and scheduled a "fairness hearing," i.e., a hearing on the final approval of the settlement for October 25, 2006 at 9:00 a.m.

Through their vigorous efforts, Petitioners have achieved a settlement that they believe is excellent and merits Court approval.[1] The proposed settlement consists primarily of a $13.925 million settlement fund from which class members may make claims for unpaid overtime wages. In addition, the Settlement provides for, inter alia, equitable relief whereby the Defendant  has agreed to put in place a procedure whereby employees are able to verify the amount of time that they are being paid for each week, and whereby Kodak will not use comp time until such time as the laws change to explicitly permit the use of comp time by private employers.

## II. PROCEDURAL BACKGROUND AND CLAIMS IN DISPUTE

Plaintiffs are all former employees of Kodak. On or about April 11, 2002 , Plaintiff William Robinson filed the instant putative class action  pursuant to section 216

---

[1] This action was filed on April 11, 2002, therefore, it is not subject to the terms of the recently enacted federal Class Action Fairness Act 28 U.S.C. Sections 1332(d), 1453, and 1711-1715("CAFA"), including the Act's settlement notice terms. Section 9 of CAFA provides that the new law applies only to cases commenced on or after the date of its enactment, which was February 18, 2005.

(b) of the Fair Labor Standards Act ("FLSA"), and section 663(1) of the New York Labor Law ("Minimum Wage Act"), alleging on behalf of himself and all others similarly situated that Kodak failed to pay him and others cash or cash equivalent for non-regularly scheduled overtime, but instead either did not compensate Class Members or permitted the Class Members to accumulate compensatory time off, in violation of those statutes. Additionally, Plaintiffs alleged that Kodak's "rate review" policy, consisting of merit-based awards of regular hourly rate increases and/or lump sum bonuses for employees, violates the FLSA in that the lump sum option allows Kodak to compensate employees without increasing the hourly rate by which overtime payments are calculated. On or about April 9, 2003 the Court granted leave to add Emmett Peters and Mary Joy Josefovicz as named plaintiffs.

Unlike what is often the case in situations where parties to a class action  move for approval of a class action settlement, Petitioners in this case need not also seek approval of a settlement class. The Court has already certified a class action over the Defendant's vigorous opposition. On April 9, 2003, the Court issued an order which, *inter alia.*, permitted the Plaintiffs to pursue  their claims under the New York Minimum Wage Act as a class action pursuant to F.R.Civ.P. Rule 23. In the April 9, 2003 Certification Decision, the Court analyzed, with the benefit of extensive briefing by the parties, all the relevant criteria for certifying a class action under  F.R.Civ.P Rule 23(a) for both Subclass A  and Subclass B. The Court addressed numerosity, commonality, typicality, and adequacy of representation. The Court also authorized opt in notification for the federal collective action.

There has been no change in circumstances,  since the Court made its findings that a collective action pursuant to 29 USC § 216(B) and a class action under F.R.Civ.P. Rule 23 are proper in this case.   Accordingly, Petitioners request the Court to adopt those findings as part of the final approval of the Settlement Agreement.

## A.  Comp Time And Unpaid Overtime Claims-Subclass A(1)

The Plaintiffs' allegations in Subclass A are summarized as follows: in Subclass A, the Plaintiffs allege that Kodak engaged in a pattern or practice of underpaying employees for overtime in the State of New York. The Fair Labor Standards Act (FLSA), 29 U.S.C. § 207(a)(1), provides that an employee who works more than forty hours per week must be compensated for the additional hours at a rate at least one and one-half times the employee's regular rate.

One component of this pattern of practice was the utilization of compensatory time off (comp time). Compensatory time off  (comp time) is scheduled work time that an employee is allowed to take off from work and which the employer is then allowed to set-off from its overtime liability to that employee.  The use of compensatory time as a setoff is forbidden to private employers. Only public employers are allowed to use a comp time set off,  and  they are only permitted to do so  in certain limited circumstances. see, generally,  *Christensen v. Harris County*,  529 U.S. 576 (2000):

Kodak denied any wrongdoing and continues to do so. Kodak argued that  it  was entitled to a set off of used comp time against overtime liability.  The Plaintiffs argue that such a setoff  would effectively legalize comp time even though Congress has refused to do so.  This issue was extensively briefed but has not  been resolved by this Court.

Plaintiffs also alleged that as part of the pattern or practice of underpaying overtime, Kodak suffered or permitted employees to work for uncompensated overtime in a wide variety of situations, including, coming in early, working through lunch, staying late, working at home, unpaid travel time, and mandatory unpaid meetings and classes. Kodak denied that there was any such pattern or practice and denied that there was wide scale underpayment of any kind.

### B.  Incorrect Regular Rate Claims –Subclass B

The Plaintiffs' allegations in Subclass B are summarized as follows: The Fair Labor Standards Act (FLSA), 29 U.S.C.§ 207(a)(1), provides that an employee who works more than forty hours per week must be compensated for the additional hours at a rate at least one and one-half times the employee's regular rate. "Regular rate" is defined in relevant part as all remuneration for employment paid to, or on behalf of, the employee, … 29 U.S.C. § 207(e) Bonus payments are payments made in addition to the regular earnings of an employee. 29 C.F.R. § 778.208 Bonuses that have not been pre-announced and that are entirely discretionary can be excluded from the regular rate. 29 U.S.C.. § 207(e)(4).  Sections 7(e) (1)-(7) excludes certain surprise discretionary bonuses for the regular rate.

However, bonuses which are announced to employees to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm are regarded as part of the regular rate of pay. 29 C.F.R. § 778.211 (c)  A bonus which is a normal and regular part of the employees income rather than a true gratuity must be included in the regular rate. *Walling v. Harnischfeger Cor*p., 325 U.S. 427, (1945);; *Niles-Bement-Pond Company*, 97 N.L.R.B. 165, 167 (1951)

10

The issue in this case was whether the bonuses that were given along with, or in lieu of,  pay raises at employees' regular rate review were the type of bonuses that have to be included within the regular rate.   Kodak argued that the bonuses were discretionary because no one was promised a bonus in advance for any particular year. The Petitioners believe that since the bonus program itself was announced in advance, that the bonuses are not rendered discretionary simply because each employee's individual entitlement to a bonus was based, at least in part, on his supervisor's subjective evaluation.

Kodak denied any wrongdoing and continues to do so. The Department of Labor has issued apparently flatly contradictory opinion letters, dated only months apart, which appear to support both the Plaintiffs' and the Defendant's positions on the question. *Compare*, D.O.L. Opinion Letter No. 2110, November 5, 1999 (annual bonuses that were distributed to individual employees by their Department heads based on subjective criteria that had some correlation with individual employee performance were includable in the regular rate for overtime purposes.)  with D.O.L. Opinion Letter No. 2217, May 19, 2000 (Under an employer's proposed pay plan, pay that could be awarded to nonexempt employees at the end of every fiscal year was excludable from the calculation of the employees' regular rate of pay because the payment, which was guaranteed and had to be re-earned on an annual basis, was a discretionary bonus.)

## III THE NEGOTIATIONS AND THE SETTLEMENT

## A. Negotiations

After the parties had engaged in contentious and extensive motion practice and extensive discovery for  several years, they decided to earnestly attempt to reach a settlement.  Affidavit of Mark Hannabury, sworn to October 16, 2006 (Hannabury

Affidavit) submitted herewith, paragraphs 41 to 47 . To that end, the parties stipulated to a schedule whereby they would complete a course of discovery, and then attempt to negotiate a settlement.  The parties agreed that if they were unable to negotiate a settlement, that they would at attempt to have the Court assist them in reaching a settlement. The parties were unable to initially to reach a settlement between themselves. *Id.* The parties met with the Court where they were once again initially unable to reach a settlement.  Finally, after extensive negotiations, the parties reached a settlement with the assistance of the Court pertaining to the total amount that the Defendant would pay to resolve the case.  Thereafter, the parties engaged in further negotiations to devise a plan of asset allocation and to work out all of the remaining details of the settlement as it appears in the Settlement Agreement that the Petitioners now ask the Court to approve. *Id.*

## B. Summary of Settlement

Petitioners have achieved this recovery on behalf of two classes. Upon final approval the two classes will be defined as follows:  Subclass A(1)  shall include all persons who worked for Eastman Kodak Company in New York State and were classified by Kodak as nonexempt employees during the period April 11, 1996 through the effective date of the settlement, who worked overtime but were not promptly paid in cash or cash equivalent for overtime worked; Subclass B shall include all persons who worked for Eastman Kodak Company in New York State and were classified by Kodak as non-exempt employees during the period April 11, 1996 through the effective date of the settlement who received a lump sum performance bonus and who worked overtime in the preceding year. Settlement Agreement  par.1

The lawsuit was filed on April 11, 2004, and since Plaintiffs' New York Minimum-Wage Act claims are subject to a six-year statute of limitations, this Class Period is consistent with the claims asserted.

The size of the classes is unknown.  That is because the class definitions for Subclass A and Subclass B are dependent (completely for Subclass A, and in part for Subclass B) upon whether employees worked for undocumented overtime. This is the primary issue in dispute as to Subclass A. It also affects the size of the class for Subclass B because Subclass B class members can make a claim if they worked for undocumented overtime as well as documented overtime.

By Court Order dated July 26, 2006,  Scott D. Piper, Esq. was appointed special master to supervise settlement administration, including reviewing claim forms and resolving any disputes (Settlement Agreement Par. 8)

The plan of allocation for both Subclasses permits claims for differing amounts depending upon whether the class member opted in to the lawsuit pursuant to the 2004 Certification Notification.  The Fair Labor Standards Act provides for additional damages where a Court determines that underpayments are willful. Only those who opted in to the case are entitled to these premiums as was explained in the Certification Notification.  No such finding of willfulness has been made in this case. The opt in premiums are not intended to be an admission by the Defendant that there were underpayments or that any such underpayments were willful.  However, as a component of the settlement,  the parties have agreed to pay premiums to those who opted in to the lawsuit.

**C. Subclass A Recovery**

**1. Fund 1**

Subclass A class members have a choice between submitting to Subclass A, Fund 1 (Fund 1) for an expedited payment, or submitting to Subclass A, Fund 2 (Fund 2) for a greater amount of money, but a somewhat more involved process.  Settlement Agreement paragraph 9 (A)

Class members who submit claim forms against Settlement Fund 1 who did not opt in to the lawsuit may be eligible to recover up to $150 per year of employment for comp time claims, and $250 per year for unpaid overtime claims for all years employed from 1996-2006.  Class members who submit claim forms against Settlement Fund 1 who opted in to the lawsuit in 2004 may be eligible to recover up to $150 per year of employment for comp time claims, and $250 per year for unpaid overtime claims for all years employed from 1996-2001 and 2005-2006, and $250 per year of employment for comp time claims, and $350 per year for unpaid overtime claims for 2002-2004.  Class members who submit claim forms against Fund 1 who opted in to the lawsuit in 2002 may be eligible to recover up to $150 per year of employment for comp time claims, and $250 per year for unpaid overtime claims for all years employed from 1996-2001 and 2005-2006, and $250 per year of employment for comp time claims, and $350 per year for unpaid overtime claims for 2000-2004.  *Id.*

Kodak reserves the right to challenge claims submitted against  Fund 1 only with respect to the years the Class member was employed at Kodak as a non-exempt employee and with respect to a Class member's opt-in status.  In order to file a claim against Fund 1, a Class member must have a minimum of 5 hours of claimed uncompensated worked

time.  Class members who submit a claim form against Fund 1 may not submit a claim

form against Fund 2 *Id.*

## 2. Fund 2

Class members who had five or more hours of comp time or uncompensated

overtime in any given year, may alternatively submit claim forms against Fund 2. Those

who did not opt in to the lawsuit may be eligible to recover as follows: Claimants may

claim $5.00 per hour for comp time and $20 per hour for unpaid overtime. Those who did

opt in to the lawsuit may be eligible to claim $7.50 per hour for comp time and $25 per

hour for unpaid overtime subject to the following a: per year cap of $750 per year for

regular years and a $1000 per year cap for opt in years. There is a total amount

recoverable cap of  $5,000, which increases to $6,000 for individuals whose claims

include opt in years.  Settlement Agreement paragraph 9 (B) .

Once all of the Fund 2  proofs of claim have been received by the Claims

Administrator, Kodak has 60 days after the end of the proof of claim period within which

to identify Fund 2 claims as to which it has objections. Within that 60 days, Kodak can

notify the Claims Administrator that Kodak intends to make a counteroffer to the

Plaintiffs and to present its basis for the counteroffer.  Alternatively, Kodak may notify

the Claims Administrator that it intends to contest the claim. *Id*.

Contested claims will be referred to the Special Master who will review the

contested claims and set up a process, together with Class Counsel and with the Claims

Administrator, to resolve contested claims. *Id*.

**3. Declaratory Relief**

Additionally, the Petitioners have obtained valuable declaratory relief for the class. The Petitioners found during their investigation that one of the major problems that class members reported regarding overtime was that they were not always notified by their supervisors when their supervisors submitted their hours of work that differed from the hours that they initially put into their so-called OARS (Online Attendance Records Screen) screens. The biweekly pay stubs that class members received with their paychecks were difficult to use to verify that employees were paid for the correct number of hours per work week.  As a result of this negotiation and settlement, Kodak has agreed, subject to the approval of the Court, to "maintain a process by which employees may check time records reflecting the number of hours worked each work week that will be utilized in determining their pay."  Settlement Agreement par.2 Petitioners believe this is a valuable provision for class members who are current employees because it will permit them to monitor their overtime payments and call the mistakes to the attention of their supervisors.

Moreover, Kodak has agreed to continue its policy, implemented in July 2002 after the institution of this lawsuit, prohibiting the use of comp time unless there is a change in the law expressly permitting this use.  Petitioners believe this is also an extremely valuable provision for class members who are current employees.  Employees will be paid cash for overtime instead of comp time which, in many cases according to Petitioners' investigation, was not voluntary.  Kodak disputes that the use of involuntary comp time was widespread.  In any event, Petitioners believe that this is an extremely

valuable relief.

**D. Subclass B Recovery**

Under the terms of the Settlement, Subclass B Class Members can apply for a payment of either $20.00 or $30.00 for each year for which the claimant received a performance bonus and also worked five or more hours of overtime during the previous calendar year.  For example, if that Class Member worked five or more hours of overtime in 1998, and received a performance bonus for that year (during rate review in early 1999), the Class Member would be eligible to make a claim for 1998. Settlement Agreement par. 9 (C.)

Whether the amount of the claim per year is either $20.00 or $30.00 depends upon whether the Class Member has previously opted in to the lawsuit for that year. Class Members who previously filed opt-in forms may receive the higher amount for opt in years. For most people who opted in, opt in years are 2002 through 2004. For those who opted in to the action in 2002 pursuant to the newspaper advertisement, the opt in years are 2000 through 2004. *Id.*

By the terms of the Settlement Agreement, Class Members of both Subclass A(1) and Subclass B., agreed to release Kodak of any and all wage and hour that they accrued while working as regular nonexempt employees.   Settlement Agreement par. 7

**E. Additional Provisions Of The Settlement**

Upon final approval of the Settlement Agreement, the action shall be dismissed with prejudice in its entirety as to Subclass A(1) and B.  The Court will have continuing jurisdiction to enforce the terms of the Settlement.  Settlement Agreement par.16

The named representatives are entitled to incentive payments under the Settlement Agreement. William Robinson is entitled to $12,000 and Mary Joy Josefovicz and Emmett Peters to $6,000 each. Settlement Agreement par. 11 G.

As was explained in the Certification Notices mailed in 2004, class members who did not wish to be a part of the settlement class and did not wish to be subject to the Judgment had the option to submit an opt out form. Those class members who have submitted opt out forms will not be subject to the Judgment and will be deemed to have never participated in this action. . As  explained in the Class Action Settlement  Notices, Class Members had the option to submit written objections to the settlement.  Settlement paragraph 18, Subclass A notice Settlement Notice p.9 (attached as Exhibit B. to Hannabury Affidavit)  Subclass B. Settlement Notice p 7 (Attached as Exhibit C to Hannabury Affidavit) . None have been received by the Claims  Administrator as of October 16, 2006.  Hannabury Affidavit paragraph 59

**F. Mailing**

On September 1, 2006, Garden City Group (GCG), an experienced class-action claims administrator selected by the parties, mailed Settlement Notices which included claims forms by first class mail to potential class members of both Subclasses. Hannabury Affidavit Pars 53 - 59.  The Settlement Notices  were sent, postage pre-paid, via first class mail to the last known addresses of each Class Member as maintained in Kodak's mailing list. Kodak maintains an address list for its past employees that employees are encouraged to update so that they can continue to receive important correspondence from Kodak.   Notices that were returned as undeliverable to GCG, and that had a forwarding address  were forwarded to any forwarding address provided, and if

none was provided, then the Claims Administrator performed a skip trace and forwarded the notice to the resulting address, if any. *Id.*

GCG sent out 25,891 Subclass A Settlement Notices and 14,433 Subclass B Settlement Notices. Id.  The Settlement Notices described the litigation, the terms of the settlement and the class member's options with regard to the proposed settlement.  The subclass notices and claims forms are attached to the Hannabury affidavit as Exhibits B& C.

## G. The Claims Process

The Petitioners made a determined and concerted effort to assist class members during the claims process.  Approximately two weeks after the mailing, the petitioner assembled a staff in its Rochester office.  Petitioners' staff contacted by telephone every individual who had not filed a claim by that time but had expressed an interest in the suit pursuant to the 2004 mailing.  Hannabury Affidavit pars. 60-68  Petitioners telephoned approximately 2200 individuals during the claims period from September 15, 2006 through October 11, 2006 .  Petitioners attempted to speak to every potential class member who had not filed a claim. For those potential class members who had a working telephone number but who were not at home, Petitioners attempted to leave a message with a responsible person or on an answering machine.  Prior to leaving a message, however, the staff called back several times attempting to contact the individual personally. *Id.*

In the conversations, and in the messages, Petitioners informed the potential class members of the deadline, and asked them if they needed assistance with the forms or left a message on their answering machine informing them that they could call our Rochester

office during office hours or during the weekend or visit our Rochester office or call the.

helpline or visit the website if they needed assistance.   *Id.*   .

## H. Results of the Mailing

As of October 16, 2006, GCG has received 1763 Subclass A claim forms and

2303 four Subclass be claims forms. Runco Aff. Par 10.  The cutoff date for postmark in

the forms was October 11, 2006, therefore more forms may come in.  Hannabury

affidavit par. 58

As of October 16, 2006, neither GCG, nor the Petitioners has received any

objections from class members to the Settlement Agreement. Id. Par 59.

As of October 14, 2006, a total of 2193 notice packets were returned to GCG by

United State Post Office (USPS) with forwarding addresses, and were remailed to the

class members at the forwarding addresses.  As of October 14, 2006, 2890 notice packets

have been returned to GCG by the USPS as undeliverable mail with no forwarding

address information. GCG has run the undeliverable names and addresses through the

National Change of Address ("NCOA") database to obtain the most recent address

information from the USPS.  A total 762 updated addresses were located as a result of the

NCOA search.  Notice packets were subsequently remailed to the new addresses Id. 57

Petitioners have not yet had an opportunity to examine the claims forms to

determine the particulars of the claims.  However, we are informed by GCG that there are

a fairly large number of Subclass A forms in which individuals applied to both Fund 1

and Fund 2 although they were only supposed to make a claim to one fund or the other.

Petitioners will work with the special Master, Kodak and the Court to devise a method to

deal with these and any other problems that arise during the course of the settlement administration. Hannabury Aff. par 60.


## IV. ARGUMENT

Rule 23(e) of the Federal Rules of Civil Procedure requires court approval for any settlement of a class action. If the parties request approval of a class action settlement, a court generally cannot require the parties to modify or otherwise alter the terms of the proposed settlement. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) ("The settlement must stand or fall in its entirety").

### A. The Court Has Already Granted Preliminary Approval

As explained in the Manual for Complex Litigation, Court approval of class action settlements is a two-step process. First, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the Court should direct that notice under Rule 23(e) notice be given to the class members and notify them of a fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. See, Manual for Complex Litigation (Third) § 30.41 (1995)

After a detailed inquiry on the fairness of the settlement, and the propriety of class certification, the Court has already granted preliminary approval. Now, the notice process

has been completed, and the parties respectfully request that the Court confirm the fairness of the settlement.

**B. All of the Pertinent Factors Counsel in Favor of Granting Final Approval**

In *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974), the Second Circuit set forth the criteria that a district court should consider in determining whether to approve a proposed class action settlement. Accordingly, the following factors to be considered:

the complexity, expense and likely duration of the litigation;

the reaction of the class to the settlement;

the stage of the proceedings and the amount of discovery completed;

the risks of establishing liability;

the risks of establishing damages;

the risks of maintaining the class action through the trial;

the ability of the defendants to withstand a greater judgment;

the range of reasonableness of the settlement fund in light of the best possible recovery;

the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 462-463 , *Sheppard v. Consolidated Edison Company of New York*, 2002 U.S. Dist. LEXIS 16314, 2002 WL 2003206 * 3 (E.D.N.Y. Aug. 1, 2002), *Becher v. Long Island Lighting Company*, 64 F. Supp.2d 174, 178 (E.D.N.Y. 1999). In considering these factors, the *Grinnell* Court advised that, "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Id.* at 462. While the Court acts as a protector of the

interests of absent class members, and must determine whether the proposed settlement is "fair, reasonable and adequate", the Court should recognize the general judicial policy favoring settlements. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 688 (N.D. Ga. 2001)("There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation.")

In addition to the factors set forth in *Grinnell*, in determining whether or not a class action settlement should be approved, courts have also been guided by consideration of whether the negotiating process by which the settlement was reached demonstrated a vigor by adversaries and that the settlement was not the product of coercion or collusion. *In re PaineWebber Ltd.  Partnerships Litig.*, 171 F.R.D. 104, 122 (S.D.N.Y. 1997), affd, *Rittmaster v. Jacobson (In re  PaineWebber Ltd.)*, 117 F. 3d 721 (2d Cir. 1997), citing, *In re General Motors Corp. Pickup Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 786 (3d Cir. 1995),  *Becher*, 64 F. Supp.2d at 178. Thus, where the settlement negotiations occurred at arm's length without any evidence of coercion or collusion, and counsel who negotiated the settlement recommends it for approval, great weight should be accorded to those recommendations and the negotiation process. *In re PaineWebber*, 171 F.R.D. at 125.

**A.     The Substantive *Grinnell*  Factors Are Met**

As demonstrated below, an analysis of the substantive considerations set forth in *Grinnell*, as well as the absence of any evidence suggesting collusion between the parties during settlement negotiations, overwhelmingly supports Petitioner's request that the Settlement be granted final Court approval.

### 1. The Complexity, Expense And Likely Duration Of The Litigation

In circumstances where the litigation would require expensive and time consuming discovery, would necessitate the use of several expert witnesses and would not be completed for years, such factors weigh heavily in favor of settlement approval. *In re Prudential Insurance Co. of America Sales Practices Litig.*, 148 F.3d 283, 318 (3d Cir. 1998), cent denied sub nom., *Krell v. Prudential Insurance Co. of America Litig.*, 525 U.S. 1114, 119 S. Ct. 890 (1999).

In this case, the Court is aware of the potential for substantial expense if it becomes necessary to continue this litigation. In the absence of settlement, the parties would be required to complete a lengthy and extensive merits discovery program, including expert discovery. As extensive as the discovery was that Petitioners conducted, Petitioners and the Defendant agreed to restrict it to a sampling of approximately 60 departments and approximately 200 individuals. It is expected that if settlement negotiations failed, that discovery could be expected to take another two to three years. There are 1700 supervisors that Petitioners have identified that may have relevant information. Kodak might be expected to demand to take depositions of some or all of the class members with information of whom Petitioners have identified more than 2000.

The trial of liability issues alone would run many weeks, perhaps months, and involve numerous attorneys, experts, the introduction of voluminous documentary and deposition evidence, vigorously contested motions and the expenditure of enormous amounts of judicial and financial resources. These expenses would undoubtedly cause an immense burden on any recovery obtained for the Class, contributing to significant delay that could deny the Class recovery for years. *Becher*, 64 F. Supp.2d at 181 ("Were the

action to continue to be litigated, even if plaintiffs ultimately were successful, they could wait years before obtaining any relief ")

In addition to the expense incurred from further litigation, the fact that the Class will be required to prove a large portion of their case through the introduction of documentary evidence, significantly adds to the complexity and likely duration of this litigation. The introduction of documentary evidence is required to corroborate the testimony of Class Members and is necessitated by the absence of detailed time records clearly showing the actual number of hours worked by employees. Avoiding this unnecessary and unwarranted expenditure of resources as well as circumventing the inherent complexity of this case benefits all parties.

## 2. The Reaction Of The Class To The Settlement

The number or percentage of Class Members who object to or opt out of the settlement is often a  factor of great significance in determining whether a settlement of a class action is fair and reasonable. See *Mandujano v. Basic Vegetable Prods., Inc*., 541 F.2d 832, 837 (9th Cir. 1976); see also *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("[i]t is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks omitted).  In fact, the lack of objections may well evidence the fairness of the settlement. *PaineWebber*, 171 F.R.D. at 126.

In this matter,  Class Members were 25,891 Subclass A Settlement Notices. Of those 14,433 also received Subclass B Certification Notices. Objections had to be postmarked by October 11, 2006. As of October 16, 2006, no Class Members have submitted objections.   Hannabury Affidavit pars. 56, 59

There were, however,  potential class members who opted  out pursuant to the 2004 Certification Mailing. There was an opt out of rate of approximately 11% for Subclass B and approximately 12% per Subclass A. Hannabury Affidavit, par. 15 However, Petitioners do not believe that the number of opt outs, as opposed to the number of objections, has any bearing on the fairness of the Settlement Agreement. The Court certified the class and  the Certification Notices went out approximately to years prior to the time when the parties reached a settlement of the action. Plainly, therefore, the number of opt outs had nothing whatever to do with the terms of the settlement or of the class member's reaction to the settlement.

Moreover, the opt out rate does not appear to be related in any way to Class Members' dissatisfaction with any aspect of the class representation.  From our interviews and investigations, it appears that most of the people who opted out chose not to be a part of this suit  either because of concerns regarding their relationship with Kodak, or because they did not believe that Kodak should be sued by employees even if it violated the law, or they believed that they did not have a claim.  This latter group would not even be class members under the definition of either Subclass A or Subclass B because the definitions were dependent on people who had unpaid or underpaid overtime. Hannabury Affidavit par. 17

Most importantly, only one of the opt outs, as far as Petitioners are able to determine, has filed a claim on her own behalf, and she did so only after having left the company. *Id*., See, Case Docket, *Letouzel v. Eastman Kodak* Co. 05-cv-6464  (W.D.N.Y. 2005)

Even if the opt out rate were relevant to the fairness of the Settlement Agreement, which it is not, it would not weigh heavily against Court approval in this case.  Numerous federal courts have held that a relatively high percentage of objectors or opt outs will not necessarily preclude approval of a class settlement. See, e.g., *Grant v. Bethlehem Steel Corp.*, 823 F.2d 20, 23 (2d Cir. 1987) (citing numerous cases in which class settlements were approved despite the fact that significant percentages, ranging from 15% to 56%, of relevant Class Members opted out of the settlement or otherwise objected).

The reaction of the class members in this case, and in particular the fact that no class members lodged an objection to any aspect of the settlement, is highly probative that the settlement is fair and reasonable.

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed;

"[T]he stage of the proceedings and the amount of discovery completed" is a factor which the courts consider in determining the fairness, reasonableness and adequacy of a settlement. *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 741 (S.D.N.Y. 1985), affd, 798 F.2d 35 (2d Cir. 1986) (citation omitted).

Petitioners have conducted substantial discovery in this case regarding the viability of maintaining a class action and has progressed the litigation to the point where "[d]iscovery is fairly advanced and the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications,* 618 F. Supp. at 745.

Petitioners and Defendant agreed on a comprehensive discovery plan whereby they selected a sample of departments and individuals and subjected information and data pertaining to those departments and individuals to extensive scrutiny and analysis. Hannabury Affidavit pars 41-47.

In addition, the parties have submitted and vigorously contested motions pertaining to the substantive and procedural issues as well as to the enforceability of waiver agreements. Such extensive motion practice along with the discovery already completed in this case provides the parties with ample opportunity to familiarize themselves with the merits of their positions. Such familiarization of the issues concerning this litigation supports a finding that the Settlement Agreement reached in this matter is fair and reasonable.  Hannabury Affidavit pars. 4, 7-12

**4. The Risks Of Establishing Liability and Damages**

In determining to settle this action, Petitioners have evaluated the extensive pre-trial investigation and have taken into account the substantial expense and length of time necessary to prosecute the action through trial, post-trial motions, and took into consideration the significant uncertainties in predicting the outcome of this complex litigation as against the Defendant.

The parties disagreed on both liability and damages and do not agree on the amount of damages that would be recoverable if Plaintiffs were to have prevailed on each claim alleged.

Plaintiffs' counsel considered that there was a substantial risk that Plaintiffs and the Class might not have prevailed on their claims and there were risks that ultimately, after motion practice, further litigation, trial and appeals, Plaintiffs could have recovered nothing from Kodak or substantially less than the Settlement amounts.

**a. Risks Of Establishing Liability Subclass A**

The substantive law pertaining to Subclass A claims presented substantial potential impediments to the Subclass A class members recovering on their claims were this matter to go to trial. Under the relevant Federal and New York Wage laws, an employee's recoverable damages are limited to overtime for hours worked more than 40 in a single workweek. Overtime is not calculated on a daily basis under the law. Kodak was not required to pay overtime simply for working more than eight hours in a day, although it often did so.  Kodak was required only to pay for overtime when an employee's total weekly hours exceeded 40.

Moreover, the law does not require payment of double time or payment of any premium for weekend work, or for working off schedule. In fact, the law entitles Kodak to a credit against claims for backpay for unpaid overtime for those extra premium hours that it voluntarily paid.

Bearing these principles in mind, counsel considered various issues, any one of which could have greatly affected the outcome of a trial of this action including the following:

A.  How much time people could prove that they actually worked over 40 hours in a single workweek. The paradox in cases where employers have not kept accurate time records, such as is alleged in this case, is that even though the burden shifts to a certain extent to the employer, the employee still must come forward with some evidence that it worked overtime. See, *Reich v. SNET Co*  892 F. Supp. 389 (D.C.Ct. 1995)  In this case, with a statute of limitations that now reaches back more than 10 years, and a potential class size of thousands of individuals who held a wide variety of different jobs, and

different types of jobs, the difficulties of proof are formidable. Petitioners believe that Petitioners could have tried the action based upon a combination of representative testimony, perimeter and internal gate pass data, payroll data, internal billing data and other information. Unquestionably, however, it would have been very difficult. There is a very real risk that the Court would have found that given the numbers of people, and the widely disparate situations, that evidence could not be used representatively and that instead each class member would have to come forward with their own individual proof of overtime hours for each year. The settlement in avoiding this very real risk is of enormous benefit to the class.

B. How much of the Comp Time was taken within the pay period.

C. Whether Comp Time that is actually taken has to be compensated again.

D. Whether people who do not have a specific recollection of which weeks or days they worked overtime are entitled to compensation.

E. Whether Kodak is entitled to a credit for all premiums and double time to offset all overtime owed.

**b. Risks Of Establishing Liability Subclass B**

The substantive law pertaining to Subclass B claims also presented substantial potential impediments to the Subclass B class members recovering on their claims were this matter to go to trial. For example:

A. Plaintiffs' counsel considered that there was a substantial risk that Plaintiffs and the Class might not have prevailed on their claims and there were risks that ultimately, after motion practice, further litigation, trial and appeals, Plaintiffs could have recovered nothing from Kodak or substantially less than the Settlement amounts.

B. Under the relevant Federal and New York State Wage laws, an employer need not include discretionary bonuses in the regular rate at all.

C. The U.S. Department of Labor appears to have issued flatly contradictory rulings as to whether these types of performance bonuses are discretionary.  Petitioners determined that Plaintiffs had a fifty per cent  chance, at-best, of winning the Subclass B issue of whether the bonus was not discretionary in the event that went to trial.

D. There are also other issues that would reduce recovery, in many cases, to nothing, even if the Court decided that the bonuses were not discretionary.  Kodak paid premiums for weekend work and for working more than eight hours a day.  Under the law, Kodak may be entitled to a credit for all those payments against backpay for overtime including payments for their calculating the regular rate as is alleged in this action.

The principal reason for the settlement of both Subclasses is the substantial cash benefit to be provided to the class now.  This benefit must be compared to the risk that no recovery from Kodak might be achieved after a contested trial, that any judgment would likely be subject to appeals.  A trial of the action could require calling many thousands of witnesses.  A trial could take several months or even years to complete.  Thereafter, appeals could be expected to take another year or more.  If an appeal succeeded, it could require a retrial of the action from the beginning.  In short, were Petitioners not to settle this action, it could easily take many more years for it to be resolved and there is no guaranty that the resolution would be in favor of the Plaintiffs.

**5. The Risks of Establishing Damages**

In assessing the Settlement, the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation. See *Grinnell*, 495 F.2d at 463; *Warner*, 618 F. Supp. at 741. Plaintiff's counsel realized that Defendants intended to mount a potentially strong defense based especially upon the perimeter gate pass data. While Petitioners believe that much of the data was incomplete or flawed, it is nevertheless true that some of the data seemed to contradict to a certain extent some of the class members recollections as to how often they worked more than 40 hours in a week.  By necessity, Plaintiffs had to keep this possibly damaging evidence in mind in reaching a settlement.

A settlement of this matter provides both parties with certainty as to an outcome of this litigation and avoids the substantial risks that exist if the parties were required to proceed with continued litigation. *Sheppard*, 2002 WL 2003206 *5. Here, the Settlement not only provides a generous monetary recovery to the Class, it avoids the risks of ultimately establishing liability and damages and sustaining the same through any appeal process. Indeed, with the removal of the risks, all parties benefit, as does the judicial system.

**6. The Risks Of Maintaining The Class Action Through The Trial**

Further litigation of this matter would not serve the interests of the Class Members. There were many motions pertaining to threshold issues such as class certification, the validity of Termination Allowance Plan (TAP) Agreements, the right to bring an action under the New York Minimum Wage Act, and the right to pursue it as a

class-action.  All of these threshold issues were resolved in favor of the Plaintiff.  The

loss on any one of these issues could have resulted in the effective end of the lawsuit.

As a result of the Settlement, Kodak has agreed not to appeal the Court's various

orders in favor of the Plaintiffs in this case that have permitted this case to move forward

as a class action. Probable issues would be the variety of individual circumstances and

department policies that may suggest a lack of "commonality."  Also, whether New York

Minimum Wage Law claims can be brought as a class action at all.  Kodak would also, in

all probability, appeal the Court's rulings that the  Termination Allowance Plan (TAP)

Agreements are not enforceable against employees in this case.

Petitioners believe that the Court was correct in all its rulings.  Nevertheless, there

always remains a significant risk that the Court  might reconsider the manageability or

superiority of the class action and enter into an order of decertification. Moreover, this

Court, or the Second Circuit, might rule differently on one or more of the other threshold

issues described in the previous paragraph. In the absence of settlement, there can be no

guarantee that Defendant would not succeed in its challenge to class certification or even

after it is granted, would not continue to challenge such ruling. If Defendant was

eventually successful with respect to class certification, all of the absent class members

who have been relying on this putative class action would have to be informed of the

Court's ruling and be afforded an opportunity to institute private litigation. Such private

litigation would be both time-consuming and wasteful.

Moreover, further litigation could require each Class Member, particularly in

Subclass A, to offer individualized evidence, and  the litigation costs associated with such

efforts would be very great. See, *In re GAIC Pick-Up Truck Fuel Tank Prods. Liab.*

*Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") Further litigation would also result in a significant delay of eventual payments to Class Members, if any.  Finally, the fact that no Class Members have lodged any objections to the Settlement Agreement also demonstrates that the Class Members themselves feel that the benefit of the instant settlement far outweighs the prospect of further litigation.

**7. The Ability Of The Defendant To Withstand A Greater Judgment**

The ability of defendants to withstand a greater judgment is often one of the factors to be considered in determining whether or not to approve a settlement,  however, the fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate. *In re PaineWebber*, 171 F.R.D. at 129.

In the instant case, the factor should be deemed to be essentially irrelevant.  The Petitioners have no way of knowing Kodak's ability to pay a larger judgment. In any event the gross settlement of $13.925 million represents a fair and reasonable settlement of the claims in this action.

**8. The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery**

The range of reasonableness of the settlement fund in light of the best possible recovery is a difficult factor to measure in this case because so many of the variables, including even the size of the subclasses, are unknown. Nevertheless, the Petitioners spent an enormous amount of time trying to assess the data that we had and to evaluate it

as a proxy for possible unpaid overtime for hourly employees during the relevant time period.

Petitioners estimate of unpaid overtime for Subclass A, and other damages and interest was $42 million. . Hannabury Affidavit, par 39  The total settlement amount for Subclass A is approximately one third that amount.  In *Grinnell*, the Second Circuit noted that "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. The Court further noted, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 455 n.2.

This Subclass A settlement represents approximately one third of the Petitioners estimation of the total damages, and prejudgment interest minus setoffs that Kodak could be expected to win at a trial.  As inexact as the estimation is, Petitioners believe that it is an excellent  result.

The subclass B. Fund and plan of allocation also adequately compensates class members given day risks of litigation.  The total amount that would be owed to each class member, even if ewe won at trial  is relatively small even if we achieved complete victory.  Petitioners estimate that the  complicated formula used by the Department of Labor to recalculate the regular rate when bonuses are not included would have added an average of  15 to 20 cents an hour to class members pay.  Accordingly, the plan of allocation where Class Members  can obtain it at $20 or $30 per year is fair inlet about the circumstances.

### 9. The Range Of Reasonableness Of The Settlement Fund In Light Of All The Attendant Risks Of Litigation.

The enormous risks of litigation are why settlement is frequently preferred. Settling avoids delay as well as uncertain outcome at summary judgment, trial and on appeal. The legal and factual difficulties inherent in this case, as described above, coupled with the unpredictability of a lengthy and complex trial, and the appellate process that would follow, with the risk of reversal, make the fairness of this substantial settlement readily apparent.

### C. The Negotiation Process by Which the Settlement Was Reached Also Supports Final Trial Court Approval

In considering whether a class-action settlement is fair, reasonable, and adequate, "attention also has been paid to the negotiating process by which the settlement was reached." *Weinberger*, 698 F.2d at 74. Courts have looked to ensure that the settlement resulted from "arm's length negotiations" by plaintiffs' counsel possessed of "experience and ability" who "have engaged in the discovery, necessary to effective representation of the class's interests." Id.; *Grinnell*, 495 F.2d at 463-66.

In this case, counsel for both sides spent in enormous amount of time coming to grips with the data in order to piece together a picture of possible unpaid overtime since 1996. After having tried, and failed to come to a settlement based on their analysis, the parties entreated the court to assist them in doing so. After several times, a Court mediated settlement was effected. There is certainly history of collusion or of any other similar impediment to a finding that the settlement is altogether fair and reasonable.

36

**D**. **The Notice of Settlement Was Adequate and Satisfied Due Process Requirements.**

Federal Rule of Civil Procedure 23(c)(2) includes the requirement that individual notice to the Class be provided to those members "who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173, (1974). In this case, Petitioners have satisfied due process requirements by mailing to each current and former hourly employee a copy of the Settlement Notice to their last known address.  Petitioners obtained addresses from Kodak  which  maintains an updated database of current and former employees addresses. Hannabury Affidavit par. 54.

Notice in a class action suit must be neutral and sufficient to alert prospective class members to the pendency and terms of the proposed settlement and to the options that are open to them in connection with the proceedings. *Handschu v. Special Services Div*., 787 F.2d 828, 832-33 (2d Cir. 1986). In addition, notice must be mailed to each class member who can be identified through reasonable effort. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974). The Settlement Notice advises all class members of the terms of the Settlement, and that a hearing will be conducted by this Court for purposes of considering the Settlement. The Settlement Notice also included a form for class members to use if they wished to submit a proof of claim as well as the allegations of the lawsuit in language that could easily be understood by class members.

Additionally, the 2004 Certification Notice was sent to all potential class members also by first-class mail.  The Certification Notice apprised potential class members that they had the right to "opt-out" of the Settlement and pursue an individual action.

The content of the Certification Notices and the Settlement Notices were preliminarily ruled upon by the Court and they fairly apprised class members of the terms of the proposed settlement. See, *Weinberger*, 698 F.2d at 70. Class members are informed of the salient terms of the Settlement and afforded a reasonable opportunity to present any objections.

While some class members expressed concern over the notices, during our telephone conversations with them it became clear that the vast majority of class members were able to understand the notices once they took the time to read them in their entirety. Hannabury Affidavit par. 66

As the Manual for Complex Litigation, Third Edition (Federal Judicial Center 1995) states, due process does not require that a class action notice state in detail whether or not a claims procedure has been determined, or for class members to know, with any degree of certainty, how much they are entitled to under a settlement, in order for the settlement approval hearing to be held. In fact, class members are typically called upon to elect inclusion or exclusion from the class, and to submit any objections, before they know whether or not the settlement has been approved, and certainly before they know how much they will receive. See cases collected in 2 Newberg, et al., Newberg on Class Actions (3d Ed. 1992) § 8.32; *Marshall v.  Holiday Magic, Inc*., 550 F.2d 1173, 1178 (9th Cir. 1977) (The aggregate amount of the settlement and the formula by which the individual's recovery may be determined are sufficient information in Rule 23 notice; numbers of claimants or amount per claimant, being conjectural, are neither necessary nor properly divulged.) Due process is satisfied if the notice describes the total amount of the Settlement Fund, and the formula for allocation and distribution. Class members need

not be advised of their individual recovery, so long as the notice provides the outlines of a formula by which the allocation will be made. *Id*. Here, such an outline of a formula has been proposed and disclosed to the Class in the notice.

Moreover, the Settlement agreement calls for the Special Master to supervise the settlement and to resolve disputes. Presumably this will also address problems that claimants had with the claims forms.  For example, some class members, we do not know how many at this point, filled out Fund 1 and Fund 2 claims although they were supposed only to submit one or the other.  Kodak has been notified this of this.  We intend to work with Kodak, and the Special Master to work out a method for determining how these claims should be processed.  Hannabury affidavit paragraph 62

 In any event, as noted above, the Settlement Fund remains subject to the control and supervision of the Court, and, therefore, adequate protection exists in connection with a fair and proper allocation of the settlement proceeds to Class Members. The notice of the settlement was fair, reasonable and adequate.


**E. The Court Should Approve The Proposed Plan Of Allocation**

"To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized -- namely, it must be fair and adequate." *In re MicroStrategy Inc. Sec. Litig*., 148 F. Supp. 2d 654, 668 (E.D. Va. 2001); see *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir 1992).  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL,* 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), aff'd, 41 F.3d 402 (8th Cir. 1994). See also I*n re Oracle Sec. Litig.*,

1994 U.S. Dist. LEXIS 21593, *3, No. C-90-0931-VRW (N.D. Cal. Jun. 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

The proposed Plan of Allocation, which was devised by experienced plaintiffs' counsel who are familiar with the relative strengths and weaknesses of the potential claims of Class members, satisfies the same standards of fairness, reasonableness, and adequacy that apply to the overall settlement.

For both Subclass A and Subclass B the proposed plan of allocation is a fair approximation of the concessions made by each side during settlement negotiations. In particular, the allocation fairly approximates the risks involved as described above of the class members obtaining any benefit were the action to go to trial. The plan of allocation fairly requires class members for Subclass A, Fund 2 to provide more information, but permits class members for both Subclass A Fund 1 and Subclass B to obtain substantial benefits with no information, documentation or proof.

The maximum amount allocable to each class member was a factor of the total amount available, which, itself was the result of long negotiations.

The plan of allocation is fair and reasonable

## V. THE ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

## A. INTRODUCTION

Petitioners also respectfully request that the Court approve the attorneys fees provision of the Settlement Agreement. The Settlement Agreement provides that $4

million of the total settlement amount will be designated as attorneys fees, costs and

expenses and paid directly to Plaintiffs counsel.  (Settlement Agreement par.3) This is in

payment for the services they have rendered in the instant action.. Petitioners have

prosecuted this complex and expensive  wage class action on a contingent fee basis.

They have expended more than 7357.45 hours of professional time and advanced

$147,292.65 in un-reimbursed costs and expenses. From the outset, Petitioners  have

proceeded at great risk against determined and vigorous opposition and have succeeded

in obtaining, on behalf of a class consisting of hourly employees working Eastman Kodak

Co. in the State of New York, a settlement consisting of $13,925,000 and a declaratory

relief providing that Kodak will maintain a process by which employees may check time

records reflecting the number of hours worked each work week that will be utilized in

determining their pay and that Kodak will also continue its policy, implemented in July,

2002 of prohibiting the use of compensatory time unless there is a change in the law

expressly permitting its use.

    As discussed in greater detail above, and in the affidavit of Mark Hannabury, filed

concurrently herewith, this Settlement represents a superior result and, subject to final

Court approval, resolves this controversy with respect to most claims against Kodak by

hourly employees.[2] For the reasons addressed below, Petitioners respectfully request that

the Court award them attorneys' fees in the approximate[3] aggregate amount of $3,852,707

---

[2]As the court is aware, there are currently  pending one or more additional lawsuits pertaining to nonexempt
employees that have been brought by another law firm.  Additionally, there remain, potentially as part of this lawsuit,
and in other pending lawsuits , unresolved issues pertaining to improper classification of employees.

    [3] Approximate because Petitioners are unable to state, at this point, how much more of the amount set aside for
attorney's fees and expenses will be allocated to expenses during the remainder of the pendency of this case.

representing 28% of the Settlement Fund, and reimbursement of out-of-pocket costs and expenses in the aggregate amount of $147,292.65.

The Settlement was the result of vigorous efforts to prosecute the action and of lengthy negotiations with the eventual assistance of the Court.. The action was commenced in 2002 after extensive research and investigation of potential claims against Kodak. As a consequence, a class action complaint alleging State and Federal wage and hour laws was prepared.  Petitioners' efforts during the course of the litigation included interviewing more than 2000 witnesses, reviewing and analyzing massive amounts of data  produced by Kodak, deposing witnesses, consulting with statistics experts, preparing comprehensive motions in opposition to Kodak's motion to dismiss the Complaint, fully briefing a motion for class certification and, preparing a successful opposition to Kodak's attempt to enforce Termination Allowance Plan Agreements to waive lawsuits against Kodak and in opposition to Kodak's motion to bring on an immediate appeal of the Decision Petitioners obtained to the Circuit Court, undertaking to complete mailings to class members, to notify class members of certification, and another to implement the settlement, and, successfully negotiating this Settlement after many hours of discussions to that end.

This litigation was undertaken and prosecuted on a wholly contingent basis and at great risk, against the determined, well-financed and vigorous opposition of Defendant and their able counsel. In expending considerable effort to litigate this case to a successful resolution for the class, it is noteworthy  that the case was not supported by an underlying government criminal or civil proceeding. Instead, Petitioners litigated this case with their self-supporting ingenuity, creativity and legal skills. As such, Petitioners

faced serious obstacles to prove Kodak's liability, and the fact and amount of damages. Nevertheless, despite Kodak's strenuous opposition and the existence of many serious legal and factual hurdles, a substantial recovery, and ongoing monitoring of overtime practices and procedures have been obtained on behalf of the Class.

As compensation for these efforts, Petitioners request that this Court award them: (1) $3,852,707.35 which represents 28% of the amount recovered on behalf of the Class; and (2) reimbursement of their out-of-pocket costs and expenses, which amount to $147,292.65 The percentage fee requested is within the range awarded by numerous courts in this Circuit, as well as other courts throughout the country, and is the appropriate method of compensating counsel for the risks they have undertaken and the result they have obtained for the Class.

For the reasons set forth herein, Petitioners respectfully submit that the attorneys' fees and expense reimbursement sought are fair and reasonable under the applicable legal standards and, in light of the contingency risk undertaken and the result achieved, should be awarded by the Court.

## 1. Relevant Factors Justify the Award of a 28% Fee In this Case

In *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000), the Second Circuit identified the following factors to be considered in determining a reasonable fee:

> the time and labor expended by counsel;
> the magnitude and complexities of the litigation;
> the risk of litigation;
> the quality of representation;
> the requested fee in relation to the settlement; and
> public policy considerations.

See also *In re Presidential Life Securities*, 857 F.Supp. 331, 335 (S.D.N.Y. 1994). Other federal courts have also considered similar factors as well. *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 70 (9th Cir. 1975), *Brown v. Phillips Petroleum Co*., 838 F.2d 451, 454-55 (10th Cir.), cert. denied, 488 U.S. 822, 109 S. Ct. 66 (1988). Consideration of these pertinent factors demonstrates that a 27%  fee award is appropriate in this case.

### a.  The Time and Labor Involved

While the $13.925 million Settlement represents an excellent recovery under the circumstances of this case, a significant effort was required to achieve it. While Petitioners make this fee application based on the percentage-of-fund method, analyzing the amount requested under the lodestar/multiplier approach so far as it is possible to do so in the circumstances of this case, also demonstrates that a one-third fee is reasonable.

The  Petitioners expended 7357 hours of professional time for an aggregate base lodestar of $1,711,892. See Affidavit of Mark Hannabury Pars 70-76  The hours reported, which are reasonable for a case of this complexity and magnitude, were compiled from contemporaneous time records maintained by each attorney, paralegal and other support staff participating in the case. Duplication of effort was minimized by utilizing a small team.

Calculation of the base lodestar however is "simply the beginning of the analysis." *In re Prudential Securities Inc. Limited Partnership Litig*., 912 F. Supp. 97, 102 (S.D.N.Y. 1996) (footnote omitted). Indeed, one would not expect a lawyer whose compensation is contingent on success of his services to charge, when successful, as little as he would charge a client who in advance has agreed to pay for his services, regardless

of success." *In re Sumitomo Copper Litig*., 74 F. Supp. 2d 393 at 396 (SDNY 1999), *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291 (9th Cir. 1994) (citations omitted). Thus, the Court has broad discretion to adjust the lodestar upwards to take into account factors such as the contingent nature of the expected compensation, the risk of non-payment, the quality of representation and the results achieved. *In re Prudential Securities,* 912 F. Supp. at 102 (citations omitted); *In re Dime Savings*, 1994 WL 60884 (E.D.N.Y. Feb. 23, 1994).

The fee sought by Petitioners is approximately 28% of the Settlement. That translates into a percentage award that is approximately 2.3 times Petitioners' combined lodestar. This is a low lodestar multiplier. Historically, a multiplier of less than 2 to approximately 5 is in the range of multipliers awarded for good to excellent results. *Roberts v. Texaco, Inc*., 979 F. Supp. 185 (S.D.N.Y. 1997) (attorneys fees awarded representing lodestar multiplier of 5.5). . Courts have often awarded fees that resulted in significantly higher multiples of the lodestar. *Willson v. New York Life Ins. Co*., 1995 N.Y. Misc. LEXIS 652 citing, *Weiss v. Mercedes-Benz of North America, Inc*., 899 F. Supp. 1297, 1995 U.S. Dist. LEXIS 14708 (D.N.J. May 11, 1995), affd., 1995 U.S. App. LEXIS (3d Cir. 1995) (awarding fee that resulted in a multiple of 9.3 times the lodestar); *In re RJR Nabisco, Inc. Sec. Litig*., [1992 Transfer Binder] Fed. Sec. L. Rep. (CCH) P 96,984, at 94,267 (S.D.N.Y. 1992) (multiplier of 6); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (multiplier of 8.74); *Glendora Community Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465, 202 Cal. Rptr. 389 (1984) (fee award was 12 times the lodestar).

Moreover, in this case the lodestar does not tell the whole story because much work is left to the done in this case.  See, i.e. *Michels v. Phoenix Home Life Mut. Ins. Co.*, 1997 N.Y. Misc. LEXIS 171  (Albany Cty. 1997).(stating that " In any event, the actual multiplier award effectively is less because the lodestar does not take into account the work still to be done by plaintiffs' counsel in the implementation of this settlement.")

 Petitioners are now only at the stage of receiving claims.  Petitioners do not know how many claims will be contested by Kodak or how much time that process will take.  It is quite possible that Petitioners will expend a great deal of additional time finalizing this case to its ultimate conclusion

Thus, a lodestar/multiplier analysis confirms the reasonableness of the fee requested.

**b.  The Magnitude and Complexities of the Litigation**

The size and difficulty of the issues in a case is a significant factor to be considered in making a fee award. *Goldberger*, 209 F.3d at 50, *Prudential* Sec., 912 F. Supp. at 100. The  paradox of this case, is the fact that Defendant's own wrongdoing, their failure to maintain time records as required by law, made it extremely difficult to make a case against the Defendant.  The law requires employers to maintain complete and accurate time records.  Moreover, the law relaxes requirements for employees to prove unpaid hours when  records have not been properly kept..  Nevertheless, employees do have to put on some evidence of underpayment.  In this case, the number of employees, departments, supervisors, policies, kinds of jobs, locations, time periods, and other circumstances made negotiating a settlement extremely complicated.   Petitioners spent enormous amounts of time organizing and interpreting such data as there was that

pertain to Kodak's pay policies.  Hannabury affidavit paragraphs 23-28  This was a large

and difficult task which, Petitioners believe, which ended up yielding a very significant

benefit to the class.


3.      **Risk of Litigation.**

The risk of litigation is an important factor in determining a fee award as

uncertainty that an ultimate recovery will be obtained is highly relevant in determining

the reasonableness of an award. *Detroit v. Grinnell Corp*., 495 F.2d 448, 470 (2d Cir.

1974). As the Second Circuit recognized in Grinnell, 495 F.2d at 471, "despite the most

rigorous and competent of efforts, success is never guaranteed. "Petitioners  undertook to

prosecute this action without an assurance of payment for their services, litigating this

case on a wholly contingent basis in the face of tremendous risk.

Here, the inherent facts and circumstances of this case presented numerous and

substantial hurdles to a successful recovery of unpaid wages. As previously mentioned,

the absence of time records not only contributed to the complexity of this case, but also

presented a significant hurdle to successful litigation. In the absence of accurate time

records that can easily corroborate and verify the claims of hours worked by employees,

such claims can be disputed through the testimony of Defendant's managers and

supervisors. Such testimony and the resultant credibility issues create a significant risk if

this matter proceeded to trial. See, e.g., *Brunson v. The City of New York*, 2000 WL

1876910, at  (S.D.N.Y. Dec. 22, 2000) (Court awarded a 50% premium to class counsel

due to difficulty presented by the risk of litigation where class counsel "faced significant

obstacles in the lack of reliable means of verifying hours worked and tasks performed by individual plaintiffs."

Plaintiffs also faced substantial risk as described above with regard to threshold issues relating to class status, the viability of the New York State action, the enforceability of the Agreements under stated federal law, and other procedural issues.

Moreover, substantive law pertaining to critical issues raised by both Subclass A and Subclass B is unsettled.  At any time during the litigation it is possible that an authoritative court could have issued a ruling that limited or eviscerated one or the other Subclasses' claims.  For example, a Circuit Court could have ruled that bonuses such as Petitioners are litigating in Subclass B are discretionary, or that employers do not have to pay for comp time that has already been used, even if it is technically illegal.

In addition to the possibility of  the risk of the certification or other threshold issues, or of losing on the merits, Petitioners faced the real possibility that Kodak could enter into bankruptcy at some point during the course of litigation. Wall Street analysts considered a Kodak bankruptcy to be  a "distinct possibility" during much of the time the class counsel were prosecuting this litigation" See, Steven Smith," Kodak Calls Come Into Focus," RealMoney.com September 22, 2006

The fact of the matter is that this case was nothing like, for example, a typical securities fraud case where some kind of a settlement is virtually assured. Petitioners always believed strongly in this case.  However, Petitioners also always knew that there was a very real possibility that some or all of the case could be toppled at any time by a variety of different circumstances.  Accordingly, the risk of litigation should weigh quite

heavily in favor of the Petitioner's request for the approval of attorneys fees provided for in the Settlement Agreement.

**6. The Risks of Maintaining the Class Action Through Trial**

There was a real risk of decertification given the large number of employees and the number of different circumstances pertaining to each.  Petitioners believe that the case was certified appropriately under a pattern or practice commonality standard. Nevertheless, this factor should certainly also weigh in favor of settlement because, "under Federal Rule of Civil Procedure 23(a), a district court 'may decertify or modify a class at any time during the litigation if it proves to be unmanageable,' " and proceeding to trial would always entail the risk, even if slight, of decertification. *In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d at 262 (quoting In re *Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 321 (3d Cir. 1998)).

These risks were all well known by Petitioners at the time this action was filed. Nevertheless, while fully aware of these litigation risks, Petitioners  invested significant resources to bring this matter to a successful Settlement. The fee award should, therefore, reflect these risks.

**c   The Quality of Representation.**

The, successful prosecution of  these...complex claims required the participation of skilled attorneys. The quality of Petitioners' work on this case was excellent and is ultimately reflected in the result achieved for the benefit of the Class. Thus, the attorneys handling this case are highly skilled and experienced in handling complex employment related matters.

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' counsel. *In. re Equity Funding Corp. Sec. Litig*., 438 F. Supp. 1303, 1337 -14-(C.D. Cal. 1977), *In re King Resources Co. Securities Litigation*, 420 F. Supp. 610 (D. Colo. 1976), *Arenson v. Board of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974). Plaintiffs were opposed in this litigation by skilled and respected counsel. Nixon Peabody LLP, is, of course, a national law firm with a well-known local reputation for vigorous advocacy in the litigation of complex civil cases in general and employment cases in particular.

The attorneys in this case, Charles W. Rogers, Mark Hannabury, and David Rothenberg are experienced attorneys with varied backgrounds with a strong combination of litigation expertise and employment law expertise.  Hannabury Affidavit par.70

From the outset, Petitioners engaged in a concerted effort against a vigorous defense. Through diligent efforts, Petitioners were able to develop a case that brought Kodak to the settlement table where there was a full evaluation of the merits and risks presented and ultimately, a settlement of the litigation on a favorable basis for the Class, both in terms of its immediate monetary provisions and its forward-looking remedial aspects.

**d. The Requested Fee In Relation To The Settlement.**

In *Blum v. Stenson*, 465 U.S. 886, 900, 104 S. Ct. 1541 (1984), the Supreme Court ruled that under the " 'common fund doctrine' " a reasonable fee may be based "on a percentage of the fund bestowed on the class." The Second Circuit reiterated this holding in *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999), stating that "the Supreme Court has implied that the percentage-of-the-fund method is a viable alternative" in

awarding fees in common fund cases. Indeed, its has long been recognized that " a lawyer who recovers a 'common fund' is entitled to a reasonable attorneys' fee from the fund as a whole." See, *In re Sumitomo Copper Litigation*, 74 F.Supp.2d 393, 396 (S.D.N.Y. 1999), citing *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478, 100 S. Ct. 745 (1980), *Becher v. Long Island Lighting Company*, 64 F. Supp. 2d 174 (E.D.N.Y. 1999), *Vizcaino v. Microsoft Corporation*, 290 F. 3d 1043 (9th Cir. 2002) (affirming approval of attorneys fees in the amount of approximately $27 million on a percentage basis), *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685 (N.D. Ga. 2001), *In re NASDAQ Market-Makers Antitrust Litig*., 187 F.R.D. 465 (S.D.N.Y. 1998), *In re Crazy Eddie Sec. Litig*., 824 F.Supp. 320, 325 (E.D.N.Y. 1993)(the use of percentage awards is not uncommon.), *Swedish Hosp. Corp. v.  Shalala*, 1 F.3d 1261, 1270 (D.C. Cir. 1993)("Petitioners adopt a percentage-of-the-fund methodology . . . because it is more efficient, easier to administer, and more closely reflects the marketplace.").

In this Circuit, the percentage of fees awarded in class actions typically range from 15% to 30% of the total fund, with many courts awarding well above 30% under appropriate circumstances. *Becher v. Long Island Lighting Company*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999), *In re In-Store Adver. Sec. Litig.*, 1996 U.S. Dist. Lexis 4281 (S.D.N.Y. April 4, 1996)(33% of the common fund), *In re SLM Intl. Inc. Sec. Litig., Master File No*. 94-Civ. 3327 (RLC) (S.D.N.Y. 1996)(33% of the common fund),  *Cohen v. Apache Corp*., 1993 WL 126560 (S.D.N.Y. April 21, 1993) (33.33% of the common fund), *In re Crazy Eddie Sec. Litig*., 824 F. Supp. 320 (E.D.N.Y. 1993) (33.8% of the common fund for $14.2 million fee), *In re Gulf Oil/Cities Service Tender Offer Litig*., 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (30% of the common fund), *In re Allstar Inns Sec.*

*Litig.*, 1991 WL 352491 (S.D.N.Y. Nov. 20, 1991) (35% of the common fund), *Eltman v.*

*Grandma Lee's Inc.*, 1986 WL 53400 at *9 (E.D.N.Y. May 28, 1986) (slightly less than

30% of the recovery), *In re New York City Mun. Sec. Litig.*, 1984 WL 2411, at *2

(S.D.N.Y. Mar. 28, 1984) (almost 33% of the recovery), *Greene v. Emersons, Ltd.*, 1987

WL 11558 (S.D.N.Y. May 20, 1987) (46.2% of the recovery), *John Vaszlavk, et al. v.*

*Storage Technology Corporation,* 2000 WL 1268824 (D. Colo. Mar. 9, 2000)(Attorneys

Fees awarded in the amount of 30% of common fund in class action matter brought under

the Age Discrimination in Employment Act and ERISA.)

Here, Petitioners believe that consideration of the results obtained, the prevailing

circumstances and the applicable precedent justify an award of $3,852,707. The requested

fee represents 28% and is well within the range of reasonable fees awarded in this

Circuit. This fee is intended to approximate the market and compensate Petitioners  in the

same manner as if the litigation was handled ordinarily on a contingent fee basis. See,

e.g., *McLendon v. Continental Group, Inc.*, 872 F. Supp. 142, 163 (D.N.J. 1994)(Class

Counsel is entitled to the fee they would have received had they handled a similar suit on

a contingent fee basis, with a similar outcome, for a paying client.)

**e. Public Policy Considerations**

. In rendering awards of attorney fees, "the Second Circuit and courts in this

district also have taken into account the social and economic value of class actions, and

the need to encourage experienced and able counsel to undertake such litigation "*In re*

*Sumitomo Copper Litigation*, 74 F.Supp.2d 393, 396 (S.D.N.Y. 1999). In this case, public

policy considerations weigh heavily in favor of awarding Petitioners requested fee. The

violations complained of are of long-standing duration.  Nevertheless, apparently no state or federal individual or governmental action has ever been brought against Kodak to correct these deficiencies.

Many courts have recognized that fee awards in cases such as this serve the dual purpose of encouraging representatives, acting as private attorney generals, to seek redress for damages and discourage future misconduct of a similar nature. *Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968) (citations omitted), reversed and remanded on other grounds, 438 F.2d 825 (2d Cir. 1970). Courts, therefore, look with favor upon awarding attorney fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized." *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973) cert denied, 416 U.S. 905, 94 S. Ct. 1610 (1974). Class actions in particular have been recognized as an invaluable safeguard of public rights. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985), *J.I. Case Co. v. Borak*, 377 U.S. 426, (1964). Here, the award of Petitioners ' requested fees will encourage the prosecution of similar claims and further a significant goal of public interest.

### f. Declaratory Relief

In this case, the Petitioners obtained valuable and extensive non-monetary relief that will benefit so much of the class as is still employed by Kodak as hourly employees. According to our investigation, Petitioners believe that many of the problems that have arisen in many different contexts pertaining to overtime have to do with the fact that employees have had a very difficult time figuring out how many hours they are being

paid for each week. This is a result of supervisors being able to alter employees time

cards without the employees knowledge.  Since employees are paid on a biweekly basis it

is difficult for them to use their pay stubs to determine how much they were credited for

during each separate work week.  This has given rise to many people not having a clear

idea of when they were, and when they were not, paid for overtime. Kodak has agreed to

institute a policy whereby employees are able to determine how much overtime they are

being paid for each work week.

Moreover, Petitioners have attained declaratory relief that assures that Kodak will

discontinue the use of comp time, and instead pay overtime in cash, unless and until the

law is changed to explicitly permit comp time for private employers.  The declaratory

relief assures that Kodak will pay for overtime rather than use comp time.

Petitioners believe that the non-monetary declaratory relief is extremely valuable

to the class although Petitioners have not put a precise monetary value on the relief. See,

i.e. *Hanlon v. Chrysler Corp*. 150 F.3d 1011, 1026 (9th Cir. 1998)


**2. The Attorneys Fees Are Fair And Reasonable Irrespective Of How Much Of The Funds Are Actually Claimed**

The deadline for the submission of claims was October 11, 2006.  As of the date

of this memoranda, October 16, 2006 the Claims Administrator has received 1,763

Subclass A forms and 2,334 Subclass B forms.  Hannabury Affidavit par. 58 A great deal

of processing will need to take place before it can be determined the total amount

claimed.  Apparently a number of claimants for Subclass A have filled out both the Fund

1 and the Fund 2 forms. Hannabury Affidavit par. 60

Accordingly, a process will have to be implemented to determine the fund to which the claimants are entitled to make a claim. Also, pursuant to the Settlement Agreement, Kodak may still object to some or all of the Fund 2 claims. Therefore, it is not possible at this time to estimate the total payouts that will be made from either subclass funds

Nevertheless, it is apparent that not all of the funds will be claimed from either Subclass A or Subclass B and that a significant portion of the funds will revert back to Kodak pursuant to the Settlement Agreement. Settlement Agreement, par. 4 Petitioners believe that the attorneys fees are reasonable in this case irrespective of the amounts actually claimed.. The Supreme Court has held that an award of attorney's fees in a class action is to be based on the total fund available to the class rather than the amount actually claimed, . See *Boeing Co. v. Van Gemert,* 444 U.S. 472, (1980). Attorneys fees have been upheld where they exceed the amount claimed when they are based upon the total amount committed by the defendant.  See, *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223, 147 L. Ed. 2d 265, 120 S. Ct. 2237 (2000) (Eleventh Circuit upheld a fee award of approximately twice the amount actually claimed by the class from the fund.)  It is also important to note that in many class-actions the issue never arises at all because the mailings and claims process takes place after final approval.

While there may be concern where the attorneys fees exceeds the total amount claimed, such concerns do not arise in this case given the amount of effort expended by Petitioners in affecting the settlement and in the fact that the Petitioners took every reasonable step to assist the claimants with the claims process, including even going to

the extent of telephoning every class member who had opted into the lawsuit during the 2004 mailing. Hannabury Affidavit pars 61-69 Moreover, the declaratory relief in this case represents an extremely valuable benefit to the class separate and apart from the monetary benefit.

## B. PETITIONERS' EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Petitioners  have incurred costs and expenses in an aggregate amount of $151,292.65 in prosecuting this litigation.  Hannabury Affidavit paragraph 77-78.  The appropriate analysis to apply in deciding which expenses are reimbursable in a common fund case of this type is whether the particular costs are reasonable. *In re Dime Savings,* 1994 WL 60884, at *5 ("The court believes that the same principles that underlie the common-fund doctrine of awarding fees apply to the reimbursement of expenses from a common fund.") The categories of expenses for which Petitioners seek reimbursement are the same type of expenses charged to hourly clients.

Petitioners believe all these expenses are reasonable and that they were necessarily incurred in obtaining this result for the Class.

## C. THE INCENTIVE AWARDS ARE APPROPRIATE AND REASONABLE

1.   The Settlement Agreement includes incentive awards in the amount of $12,000 for named plaintiff William Robinson , and $6,000 for class representatives Emmett Peters and Mary Joy Josefovicz. Hannabury Affidavit pars. 79-82 The class representatives have been of invaluable assistance to the Petitioners in pursuing this case.  They provided a great deal of information that was necessary to obtain the result that we have attained.  Moreover, because of their relationship with the defendant they

have taken on special risks that are not the norm for class action plaintiffs.  Mr. Peters

was a current employee when the litigation commenced.  Two of the class

representatives, Mr. Peters and Ms. Josefovicz, signed TAP Agreements that prohibit

employers from suing Kodak on pain of having their severance benefits having their

severance benefits reclaimed  by Kodak .None of the named Plaintiffs could be certain

at the outset that the Court would invalidate their TAP Agreements. This brings yet

another measure of risk that the representatives took in order to prosecute this case.

Hannabury affidavit paragraph 79-83

These incentive awards are reasonable in light of the risks assumed by the class

representatives in assisting the class in obtaining this relief from their employer and

former employer. See i.e. *Denney v. Jenkens & Gilchrist*, 2004 U.S. Dist. LEXIS 26041,

No. 03 Civ. 5460, 2005 WL 388562, at *31 n.248 (S.D.N.Y. Feb. 18, 2005)*; RMED Int'l,*

*Inc. v. Sloan's Supermarkets, Inc*., 2003 U.S. Dist. LEXIS 8239, No. 94 Civ. 5587, 2003

WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (" $ 25,000 incentive award requested for

[Plaintiff] is reasonable").

The Court should approve the incentive awards.

## D. CONCLUSION

The court should approve the class-action settlement agreement and release,

including B. in its entirety.

Dated: October 16, 2006                    Respectfully Submitted,

_____/s/ Mark Hannbury_____

Mark Hannabury, Esq
Charles W. Rogers, Esq.
Attorney for the Plaintiffs
45 Exchange Street, Suite 825
Rochester, New York 14614
(585) 454-2338

TO:
Jocelyn E. Torres, Esq.
Todd R. Shinaman, Esq.
Nixon Peabody LLP
Attorneys for Defendant Eastman Kodak Company
Clinton Square
P.O. Box 31051
Rochester, New York 14603
(585) 263-1000

.