UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILLIAM ROBINSON, et al.,
*On behalf of himself and all other employees*
*similarly situated*

                    Plaintiffs,

    v.

THE EASTMAN KODAK COMPANY,

             Defendants

_____

**PLAINTIFFS' MEMORANDA IN
SUPPORT OF FINAL APPROVAL OF
CLASS ACTION SETTLEMENT
AGREEMENT AND RELEASE**

02-CV-6204T(F)

Hon. Michael A. Telesca

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ........................................................ 1

**TABLE OF AUTHORITY** ....................................................... 2

**I.  INTRODUCTION AND SUMMARY OF AGREEMENT AND CLAIMS**........ 4

**III. DESCRIPTION OF THE LITIGATION** ............................... 5

**II. OTHER WAGE AND HOUR CLASS AND THE COLLECTIVE
LITIGATION AGAINST EASTMAN KODAK**....................................... 9

**III. SUMMARY OF CLAIMS IN DISPUTE** ............................... 10

**IV THE NEGOTIATIONS AND THE SETTLEMENT**....................... 11

  **A.  Negotiations** .................................................. 11
  **B. Summary of Settlement** ................................. 11
  **Option 1 and Option 2 Allocation** ......................... 13
  **F. Mailing**........................................................ 14
  **H. Results of the Mailing** ................................. 14
  **G. The Claims Process**....................................... 15

**V. THE COURT SHOULD APPROVE THE SUBSTANCE OF THE
SETTLEMENT** ...................................................... 15

  **A. The Court Has Already Granted Preliminary Approval** ............... 15
  **B. All of the Pertinent Factors Counsel in Favor of Granting Final Approval
(Grinnell Factors)**......................................... 16
  **C. The Negotiation Process by Which the Settlement Was Reached Also
Supports Final Trial Court Approval** .............................. 27
  **D. The Notice of Settlement Was Adequate and Satisfied Due Process
Requirements.**........................................... 28
  **E. The Court Should Approve The Proposed Plan Of Allocation**..................... 29
**VI. The Court Should Certify The Class For Settlement Under F.R.Civ.P. 23** .... 30

**VII. THE ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED** ............................ 36

**VIII CONCLUSION** ............................................. 47

## TABLE OF AUTHORITY

**Cases**

Eisen v. Carlisle & Jacquelin, 417 U.S. 156 (1974). ........................................ 27

In re NASDAQ, 176 F.R.D. at 102 ................................................................. 34

Maley v. Del Global Tech. Corp., 186 F.Supp.2d 358, 370 (S.D.N.Y. 2002) .................. 37

Arenson v. Board of Trade, 372 F. Supp. 1349 (N.D. Ill. 1974) ...................................... 42

Becher v. Long Island Lighting Company,
  64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) ......................................................... 16,17,43

Blech Sec. Litig., No. 94 Civ. 7696, 2002WL 31720381, at *1 (S.D.N.Y. Dec. 4,2002) 35

Boeing Co. v. Van Gemert, 444 U.S. 472, (1980) ............................................................ 45

Bourlas, 237 F.R.D. at 353 ............................................................................................ 33

Brunson v. The City of New York, 2000 WL 1876910, at  (S.D.N.Y. Dec. 22, 2000).... 39

Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979).................................................... 33

Campbell v Pricewaterhousecoopers (E.D. Ca. 2008) (CIV. S-06-2376 2008) .............. 22

City of Detroit v. Grinnell Corporation,
  495 F.2d 448, 463 (2d Cir. 1974).......................................................... 15,16,25,27,39

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1284-85 (9th Cir 1992).................... 28

Cohen v. Apache Corp., 1993 WL 126560 (S.D.N.Y. 1993) ..................................... 35, 43

Denney v. Jenkens & Gilchrist, 2004 U.S. Dist. LEXIS 26041,
  (S.D.N.Y. Feb. 18, 2005) ........................................................................................ 46

Dingwall v. Friedman Fisher Associates, P.C., 3 F. Supp. 2d 215, (N.D.N.Y.. 1998)..... 22

Dolgow v. Anderson, 43 F.R.D. 472, 487 (E.D.N.Y. 1968)............................................ 44

Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 173,................................................... 27

Eltman v.  Grandma Lee's Inc., 1986 WL 53400 at *9 (E.D.N.Y. May 28, 1986).......... 43

Grace v. Ludwig, 484 F.2d 1262, 1267 (2d Cir. 1973)................................................... 44

Greene v. Emersons, Ltd., 1987 WL 11558 (S.D.N.Y. May 20, 1987)....................... 35,43

Handschu v. Special Services Division, 787 F.2d 828, 833 (2d Cir. 1986),, 832-33 ....... 27

Hashop v. Rockwell Space Operations Co.  867 F. Supp. 1287 (S.D.Tex 1994)............. 22

In re Allstar Inns Sec. Litig., 1991 WL 352491 (S.D.N.Y. Nov. 20, 1991) .................... 43

In re American Bank Note Holographics, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001).... 19

In re Avon Prods. Inc., Sec. Litig., No. 89 Civ. 6216, 1992 WL14349768, at *3
  (S.D.N.Y. Nov.6, 1992) ........................................................................................... 35

In re Crazy Eddie Sec. Litig., 824 F. Supp. 320 (E.D.N.Y. 1993) ............................. 35,43

In re General Motors Corp. Pickup Truck Fuel Tank Products Liability Litig., 55 F.3d
  768, 786 (3d Cir. 1995)....................................................................................... 17,24

In re Gulf Oil/Cities Service Tender Offer Litig., 142 F.R.D. 588, 597 (S.D.N.Y. 1992)43

In re Initial Pub. Offering Sec. Litig., 2009 U.S. Dist. LEXIS 93162 (S.D.N.Y 2009) ... 37

In re In-Store Adver. Sec. Litig., 1996 U.S. Dist. Lexis 4281 (S.D.N.Y. April 4, 1996). 43

In re JWP Inc. Sec. Litig., 92 Civ. 5815, (S.D.N.Y. Jan. 24,1997) ................................. 35

In re King Resources Co. Securities Litigation, 420 F. Supp. 610 (D. Colo. 1976).........42
In re MicroStrategy Inc. Sec. Litig., 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) ............28
In re New York City Mun. Sec. Litig., 1984 WL 2411, at *2 (S.D.N.Y. Mar. 28, 1984) 43
In re Oracle Sec. Litig., 1994 U.S. Dist. LEXIS 21593, *3, No. C-90-0931-VRW (N.D. Cal. Jun. 18, 1994) ................................................................................................29
In re Painewebber Ltd.  Partnerships Litig., 171 F.R.D. 104, 122 (S.D.N.Y. 1997) ..................................................................................................................17,19,25
In re Prudential Ins. Co. of Am. Sales Practice Litig., 148 F.3d 283, 321 (3d Cir. 1998)) .................................................................................................................... 17.38.41 17
In re SLM Intl. Inc. Sec. Litig., Master File No. 94-Civ. 3327 (RLC) (S.D.N.Y. 1996) . 43
In re Visa CheckiMasterMoney Antitrust Litig., 280 F.3d 124, 132 (2d Cir. 2001)........33
In re Warner Communications Sec. Litig., 618 F. Supp. 735, 741 (S.D.N.Y. 1985) .......19
In. re Equity Funding Corp. Sec. Litig., 438 F. Supp. 1303, 1337 -14-(C.D. Cal. 1977). 42
Ingram v. The Coca-Cola Company, 200 F.R.D. 685, 688 (N.D. Ga. 2001) ...................16
J.I. Case Co. v. Borak, 377 U.S. 426, (1964)....................................................................44
Janik v. Rudy, Exelrod & Zieff. 119 Cal. App. 4th 441, 2004 .........................................41
John Vaszlavk, et al. v. Storage Technology Corporation, 2000 WL 1268824 (D. Colo. Mar. 9, 2000)..............................................................................................................43
Klein v. PDG Remediation, Inc., No. 95 Civ. 4954,1999 WL 38179, at *3-*4 (S.D.N.Y. Jan. 28,1999)................................................................................................................35
Krell v. Prudential Insurance Co. of America Litig., 525 U.S. 1114, 119 S. Ct. 890 (1999) ........................................................................................................................17
Luciano, et al. v Eastman Kodak Company, Case No. 04-CV-6 194, CJS(F) .................... 9
Malcolm, et al. v Eastman Kodak Company, Case No. 03-CV-6589T(P) ......................... 9
Mandujano v. Basic Vegetable Prods., Inc., 541 F.2d 832, 837 (9th Cir. 1976).............19
Michels v. Phoenix Home Life Mut. Ins. Co., 1997 N.Y. Misc. LEXIS 171  (Albany Cty. 1997) ............................................................................................................................38
NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 517 (S.D.N.Y. 1996)........32
Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809, (1985), ..........................................44
Reich v. SNET Co  892 F. Supp. 389 (D.C.Ct. 1995) ......................................................23
Rittmaster v. Jacobson (In re  Painewebber Ltd.), 117 F. 3d 721 (2d Cir. 1997).............17
Schaefer v. Ind. Mich. Power Co., 197 F. Supp. 2d 935  (W.D. Mich. 2002).............22,30
Amchem Products, Inc. v. Windsor, 521 U.S. 591. at 623 ...............................................33
Sheppard v. Consolidated Edison Company of New York, 2002 U.S. Dist. LEXIS 16314, 2002 WL 2003206 * 3 (E.D.N.Y. Aug. 1, 2002)......................................................16
Spradling v. City of Tulsa, 95 F.3d 1492, 1495 (10th Cir. 1996)....................................21
Strougo ex reI. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp.2d 254 (S .D.N.Y.2003)................................................................................................................34
In re Sumitomo Copper Litigation, 74 F.Supp.2d 393, 396 (S.D.N.Y. 1999) .................44
Waters v. Int'l Precious Metals Corp., 190 F.3d 1291 (11th Cir. 1999) ..........................45
Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982).......................................16,26,28
White v. NFL, 822 F. Supp. 1389, 1420-24 (D. Minn. 1993) ..........................................29

**Statutes**

29 U.S.C. § 213(a)(1)........................................................................................................21
29 U.S.C. § 207(a)(1)........................................................................................................21

**Other Authorities**

Department of Labor Opinion Letter FLSA2007-5 ....................................................... 22

Manual for Complex Litigation (Third)(1995) ........................................................ 15,34

Wall Street Journal, March 10, 2009 ............................................................... 40

RealMoney.com, September 22, 2006 ............................................................. 40

**Rules**

F.R.Civ.P. Rule 23(c)(2) ........................................................................ 27

F.R.Civ.P. Rule 23(a), ......................................................................... 30

F.R.Civ.P. Rule 23(b)(3), ....................................................................... 28

## I. INTRODUCTION AND SUMMARY OF AGREEMENT AND CLAIMS

Plaintiffs' counsel, the Law Offices of Charles W. Rogers, Esq., (Petitioners) pursuant to Federal Rule of Civil Procedure 23, and on behalf of Plaintiff Bruno Dambrauskas ("Plaintiff"), respectfully submit this memorandum of law in support of Petitioners' request that this Court (a) grant final approval for the proposed Class Action Settlement Agreement And Release, (Settlement Agreement), attached to Affidavit of Mark Hannabury, October 19,2009) (hereinafter " Hannabury Aff.") as Exhibit A , and (b) retain jurisdiction over the matter for the purposes of overseeing the settlement.

Through their vigorous efforts, Petitioners have achieved a settlement that they believe is excellent and merits Court approval. The proposed settlement consists of a cash fund of $4,000,000 from which all class members either automatically receive $100 per year that they worked in a salaried position (Option 1) or alternatively may make claims for a larger prorated percentage of the fund (Option 2) for unpaid overtime wages. In addition, the Settlement Agreement provides for, *inter alia*, the administration of all claims, and the payment from the settlement fund of 33% of the fund to account for both attorney's fees and Petitioners' expenses as well as a $12,000 incentive payment to the technologists class representative.

As is more fully discussed below, the claims process has been completed and there have been no objections filed to the settlement.

Class Plaintiffs and their counsel believe that the Settlement, as outlined in the Settlement Agreement, is fair, reasonable, and adequate and is in the best interests of the Settlement Class. It was reached after years of discovery, analysis,  and arm's length negotiations.

## III. DESCRIPTION OF THE LITIGATION

### A. Background Of The Litigation

This class action was originally brought on by William Robinson, a former hourly employee of Kodak,  on April 11, 2002. Robinson alleged that Kodak underpaid hourly employees in a number of different ways in violation of the Fair Labor Standards Act ("FLSA"), and the New York Labor Law and New York Minimum Wage Act (collectively "NYLL"). The court certified two subclasses of hourly employees on January 31, 2004. Kodak denied and continues to deny the allegations pertaining to the hourly employees, but nevertheless agreed to a settlement of the hourly employees claims. The hourly employees class members were duly notified, and the court rendered a final approval of the hourly employees settlement on November 17, 2006. (Hourly Employees Final Approval Order)

### B. Putative Technologists Class A2

In the course of pursuing the claims on behalf of the hourly employees, Petitioners  developed information which led them to believe that Kodak had also underpaid certain salaried employees as well. These salaried employees were individuals

who had the job description "Technologist" at some point in their careers at Kodak. Class counsel believed that Kodak improperly classified technologists as being exempt from mandatory overtime pay.

The Hourly Employees Final Approval Order had carved out a putative Subclass A(2) of technologists whose claims were not part of the Hourly Employees Final Approval Order.  The order stated that  Kodak reserved any and all rights with respect to the putative class of technologists including, but not limited to, the right to assert any and all arguments related to the certification of a technologist class, the definition of such class, the appropriateness of such claims being brought within the *Robinson* action, and whether such claims relate back to the filing of the *Robinson* Complaint.

On April 7, 2005, the Court entered a stipulated order tolling the statute of limitations for individuals who worked as exempt technologists in the State of New York who may have potential wage and hour claims. On October 13, 2006, the Court entered a stipulated order appointing Bruno Dambrauskas as a provisional class representative for a putative subclass of technologists designated Putative Subclass A(2). Kodak stipulated to these orders but, in so doing, denied all liability and reserved all of its arguments as described above.

In December 2008, the parties reached a tentative general resolution of the Putative Subclass A(2) claims subject to negotiation of the precise terms. In June of  2009 the parties executed a final settlement agreement which is the subject of this joint motion.

**C. The Class Plaintiff's Prosecution of the Case**

*Relevance Of The Time Spent On The Hourly Class Action*

Class Plaintiffs have been aggressively prosecuting their claims for seven years. That is how long it is been since the original hourly employees class action was filed. While the technologist issue was not identified until later, much of the original discovery, and motion practice relating to the hourly claims also benefited, and indeed was necessary for the prosecution of the technologist class claims.

For example, the hard-fought battle pertaining to the TAP agreements, which was litigated in the employees favor,  and for which appeal to the Second Circuit was sought by Kodak,  is directly relevant to the technologists class.

The resolution of several other issues litigated pursuant to the hourly claims class also directly benefited the technologists class. For example, the resolution, in the employees favor of the issue of the applicability of the New York Labor Law to the instant claims, and the of the viability of class-action treatment of New York labor law claims was litigated in the earlier portion of the action directly benefit the Technologists Class.

 Additionally, much of the discovery effort pertaining to the hourly claims directed benefited the technologists class. Much of the basis of this lawsuit is premised on information gleaned from the thousands of interviews that the petitioners conducted during the hourly portion of the lawsuit.

**D. Discovery and the Technologists Class**

Petitioner undertook a great deal of additional work on behalf of the technologists. Much of this related to analyzing large amounts of data pertaining to the class members. Hannabury Aff.,  pars 19-24  Petitioners also conducted many interviews

of technologists class members for the purpose of obtaining information about job duties as they related to the FLS say exemptions as well as about unpaid overtime hours. Hannabury Aff., par. 30.

The enormous amount of time that plaintiff spent on organizing and assessing the data, as well as obtaining information by other means such as by interviewing clients ultimately led to the settlement which the subject of his motion.

**E. History of the Settlement Negotiations**

Negotiations on a wide variety of issues pertaining to the Technologists Class have taken place, piecemeal, over the course of several years. Much of the negotiation had to do with the scope of discovery and the timing of production. Many other issues, including the relationship of this case with other pending matters, the statute of limitations, the scope of the job descriptions to be included within the class, and several other issues were hard fought by both sides, and ultimately, settled. In due course, negotiations focused on an ultimate financial resolution of the case. Settlement negotiations were sometimes contentious, but ultimately productive. Hannabury Aff., pars. 35-40.

The Plaintiff ultimately agreed to the Settlement after evaluating various factors, including the risks to Plaintiffs' theories of liability and damages and risks of not obtaining certification of a class.

Briefly stated, the risks to the plaintiff in pursuing this action to trial included both substantive and procedural issues including, but not limited to: risks that many claims may be barred by the statute of limitations, that certification may be challenged

given the disparate job duties,  the difficulties in proving overtime hours worked, and that many claimants may be unable to prove that they were improperly classified at all.

The principal reason for the settlement is the substantial cash benefit to be provided to the class now. This benefit must be compared to the risk that no recovery from Kodak might be achieved after a contested trial, that any judgment would likely be subject to appeals. A trial of the action could require calling hundreds of witnesses and could take could take months to complete. Thereafter, appeals could be expected to take another year or more. If an appeal succeeded, it could require a retrial of the  action from the beginning.

In short, were plaintiff not to settle this action, it could take many more years for it to be resolved and there is no guaranty that the resolution would be in favor of the Plaintiffs.

## II. OTHER WAGE AND HOUR CLASS AND THE COLLECTIVE LITIGATION AGAINST EASTMAN KODAK

There have been several other lawsuits brought in the Western District of New York against Eastman Kodak by other class representatives, represented by different counsel that have sought class, and/or collective status in order to prosecute wage and hour claims. See, for example, *Luciano, et al. v Eastman Kodak Company*, Case No. 04-CV-6 194, CJS(F); *Malcolm, et al. v Eastman Kodak Company*, Case No. 03-CV-6589T(P).  It is plaintiffs understanding that all of the other cases have been resolved and that this settlement marks the conclusion of all such currently pending litigation.

### III. SUMMARY OF CLAIMS IN DISPUTE

The technologist class allegations are that Kodak reserved certain jobs for individuals who are highly skilled but whose job that did not require a learned professional education. These were the technologists positions.

The technologist positions were salaried and denominated by Kodak as exempt from the mandatory overtime provisions of the FLSA.  Petitioners allege that the technologists routinely worked 40 or more hours per week without receiving overtime pay at 1 1/2 times their regular rate of pay.

Petitioners allege that overtime pay was mandatory because the technologist position was not a learned professional occupation as that is defined in the FLSA and the New York Labor Law. Therefore, petitioners allege that the technologists positions were not properly exempted from the mandatory overtime provisions of the law. Petitioners also alleged that the technologists positions, and the employees who held them, were not properly exempted under any of the other FLSA exemptions, such as the administrative employee  exemption, the executive employee exemption, the outside sales exemption, the creative professional exemption, or the computer professional exemption.

Petitioners alleged that many of the technologists changed jobs at some point during the course of their employment. Often, this was a change of job title only.  Many of the technologists were moved to other positions, including learned professional type positions, without regard to whether or not they met the requirements of a learned professional pursuant to the FLSA.

Kodak, the other to hand, takes the position that,  if any technologists worked overtime and were not paid extra for it, that they were properly exempted under one of

the exemptions. Kodak takes the position that technologists either had the requisite

formal education or that they had been trained on the job to do learned professional work.

Additionally, Kodak asserted that several other of the exemptions, apart from the learned

professional exemption, may apply to various individuals.  Moreover, Kodak takes the

position that there are legitimate issues as to whether or not the collective action, or class-

action vehicles are appropriate for litigation of these issues.

## IV THE NEGOTIATIONS AND THE SETTLEMENT

### A.  Negotiations

After the parties had engaged in contentious and extensive motion practice (prior

to settlement of the hourly employees class action) and engaged in extensive discovery

for several years, they began to earnestly engage in negotiations..  Hannabury Aff. pars.

35 to 40  After much wrangling and conferring, the parties reached an agreement in

principle as to the amount of compensation to be afforded the technologists in November

2008. Thereafter, the parties engaged in further negotiations as to a plan of allocation and

other issues and reached a final settlement agreement in June of 2009.  It is this

agreement that the parties now come before the court to ask final approval.

### B. Summary of Settlement

### A. Key settlement provisions

The following is a summary of the key aspects of the settlement:

1. The Court certifies the Settlement Class and approves the Class Action Settlement
   and Release as fair and reasonable.

2. The Court appoints Charles W. Rogers, Esq. and Mark Hannabury, Esq. as class
   counsel.

3. Kodak makes a total settlement payment of $4M inclusive of attorneys' fees, costs and expenses, incentive awards, employer and employee share of taxes, settlement administration, and special master fees;

4. All past or present Kodak employees who held the position of technologist in the State of New York at any time since 1996 become participating class members unless they made a timely request for an exclusion;

5. Kodak obtains a release and waiver and dismissal with prejudice of all federal and state wage hour claims by participating class members;

6. The Court approves the Settlement Class Notice and approves the notification process pursuant to which class members have been notified that they had four choices:

   a. Object to the settlement by filing a timely objection, or
   b. Exclude oneself from the settlement by filing a timely opt out form, or
   c. Choose to receive an Option 1 payment, by selecting that option or by doing do nothing. In either case the class member will receive $100 for each year that (s)he held an salaried position at any time from 1996 to the present time, or
   d. Choose an Option 2 payment. An Option 2 payment entitles qualified class members for a larger payment than the Option 1 payment. Option 2 payments are based on fixed individual percentages of the common fund divided into unit shares. Individual percentages are ascertained by multiplying weeks in service since 1996, by most recent salary.

7. Option 2 claims can be challenged by Kodak as follows:

   a. Kodak shall designate any claims that it intends to dispute no later than sixty (60) days after the effective date.
   b. Disputed claims go to the Special Master who makes a determination based upon documentary evidence and testimony whether the class member worked overtime for the disputed calendar year or was exempt and;
   c. Class members shall receive no payment for years that the Special Master finds him/her ineligible unless the ineligibility is based upon an exemption other than the learned professional exemption. If the ineligibility is based upon an exemption other than the learned professional exemption, the class member is entitled to an Option 1 payment for that year.

8. Class counsel is applying for 33% of the fund in total satisfaction of all attorneys fees, costs and expenses.

9. Remaining sums not paid out as provided above revert to Kodak

10. One class representative receives an incentive payment in the amount of $12,000.

B. **Settlement Chronology**

The following is a summary of the proposed settlement chronology:

| EVENT | DATE |
|---|---|
|  |  |
| Order Granting Preliminary Approval | August 21, 2009 |
| Class Notice | August 31, 2009 |
| Response Deadline | October 5,  2009 |
| Final Fairness Hearing | October 21, 2009 |
| Effective Date | 10 calendar days after time for appeal of final approval order has run, or 10 days after appeal completed |
| Complaint Dismissed and Release Effective | Upon Effective Date |
| Funding By Defendant, Fees And Expenses To Special Master, Fees And Expenses To Settlement Administrator | Upon the later of the Effective Date or January 4, 2010 |
| Payment Of Counsel Fees And Plaintiff incentive payment | One day after the later of the Effective Date or January 4, 2010 |
| Option 1 Payments To Class Members | Within 21  business days of the later of the Effective Date or January 4, 2010. |
| Designation of disputed Option 2 claims | No later than 60 days after effective date |
| Option 2 Payments to Class Members (and Option 1 payments for certain disputed option two payments) | Within 21 business days of the later of the Final Special Master's Decisions or January 4, 2010. |

**Option 1 and Option 2 Allocation**

The Parties agreed upon  a plan of allocation that fairly and realistically reflected the opposing positions as to liability of the defendant and viability of the action.  All class members who did not exclude themselves, or choose Option 2, will receive $100 for each year from 1996 to the present that they worked as a salaried employee of Kodak. These payments cannot be contested on any basis.

Employees who chose Option 2 can receive a substantially larger payment. Employees who chose Option 2 can receive a prorated portion of the entire fund based on

their weeks of service since 1996.  However Option 2 claimants take a calculated risk. Kodak may challenge an Option 2 claim to the Special Master. This challenge may be based upon any  of  the applicable  FLSA exemptions,  or on whether or not the individual worked unpaid overtime.

However, even Option 2 claims that are rejected by the Special Master do not result in no payment to the class member unless the Special Master finds that the learned professional exemption applies or that there was no unpaid overtime.  For all other applicable FLSA exemptions, the claimant will still receive the Option 1 payment.

This was a compromise reflecting a concern that it may be unfair to expect the claimants to learn all of pertinent FLSA law and regulations pertaining to all of the exemptions in order to make a choice as to which option to pursue.

### F. Mailing

On August 31, 2009, Rust Consulting, the class-action administrator,  mailed Class Notices to 498 Putative  Class Members contained in the Class List via First Class mail.   Hannabury Aff. pars. 41-43 .  Of the 498 notices sent 14 were returned as undeliverable.  Of those, 13 were re-mailed using updated addresses.  Of  the 498 notices, only one was undeliverable. *Id*, , par.  44.

### H. Results of the Mailing

The administrator has received 199 claim forms returned. *Id*. par. 45.  The administrator has received 58 Option 2 claim forms. *Id.* Option 1 claims were optional because  Class Members receive an Option 1 payment whether or not they send in a claim form.

Rust has received 6 requests for exclusions. *Id.*, par. 47  Neither Rust nor Petitioners have received any objections to the settlement. *Id.* par. 46.

## G. The Claims Process

The notices were somewhat complex given the nature of the choice that the claimants had to make. However, the notice clearly spelled out all of terms and all of the class members' options.  Hannabury Aff. par. 48

Petitioners also created a website with additional information about the litigation and about class members' options.  Class members did not report significant problems understanding the Notice or their options. Hannabury Aff.  par. 51.

## V. THE COURT SHOULD APPROVE THE SUBSTANCE OF THE SETTLEMENT

## A. The Court Has Already Granted Preliminary Approval

As explained in the Manual for Complex Litigation, Court approval of class action settlements is a two-step process. First, counsel submits the proposed terms of settlement and the Court makes a preliminary fairness evaluation. If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the Court should direct that notice under Rule 23(e) notice be given to the class members and notify them of a fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement. See, Manual for Complex Litigation (Third) § 30.41 (1995)

In this case, the Court has already granted preliminary approval of the Settlement Agreement and of the Settlement Class Notice and the claims process after a detailed inquiry on the fairness of the settlement. Now, the notice and claims process has been completed, and the parties respectfully request that the Court confirm the fairness of the settlement.

**B. All of the Pertinent Factors Counsel in Favor of Granting Final Approval (Grinnell Factors)**

In *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974), the Second Circuit set forth the criteria that a district court should consider in determining whether to approve a proposed class action settlement. Accordingly, the following factors to be considered:

> the complexity, expense and likely duration of the litigation;
> the reaction of the class to the settlement;
> the stage of the proceedings and the amount of discovery completed;
> the risks of establishing liability;
> the risks of establishing damages;
> the risks of maintaining the class action through the trial;
> the ability of the defendants to withstand a greater judgment;
> the range of reasonableness of the settlement fund in light of the best possible recovery;
> the range of reasonableness of the settlement fund in light of all the attendant risks of litigation.

*Grinnell*, 495 F.2d at 462-463 , *Sheppard v. Consolidated Edison Company of New York*, 2002 U.S. Dist. LEXIS 16314, 2002 WL 2003206 * 3 (E.D.N.Y. Aug. 1, 2002), *Becher v. Long Island Lighting Company*, 64 F. Supp.2d 174, 178 (E.D.N.Y. 1999). In considering these factors, the *Grinnell* Court advised that, "[t]he Court must

eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Id.* at 462. While the Court acts as a protector of the interests of absent class members, and must determine whether the proposed settlement is "fair, reasonable and adequate", the Court should recognize the general judicial policy favoring settlements. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982), *Ingram v. The Coca-Cola Company*, 200 F.R.D. 685, 688 (N.D. Ga. 2001)("There is a strong judicial policy in favor of settlement, in order to conserve scarce resources that would otherwise be devoted to protracted litigation.")

   In addition to the factors set forth in *Grinnell*, in determining whether or not a class action settlement should be approved, courts have also been guided by consideration of whether the negotiating process by which the settlement was reached demonstrated a vigor by adversaries and that the settlement was not the product of coercion or collusion. *In re PaineWebber Ltd.  Partnerships Litig.*, 171 F.R.D. 104, 122 (S.D.N.Y. 1997), affd, *Rittmaster v. Jacobson (In re  PaineWebber Ltd.)*, 117 F. 3d 721 (2d Cir. 1997), citing, *In re General Motors Corp. Pickup Truck Fuel Tank Products Liability Litig.*, 55 F.3d 768, 786 (3d Cir. 1995),  *Becher*, 64 F. Supp.2d at 178. Thus, where the settlement negotiations occurred at arm's length without any evidence of coercion or collusion, and counsel who negotiated the settlement recommends it for approval, great weight should be accorded to those recommendations and the negotiation process. *In re PaineWebber*, 171 F.R.D. at 125.

   As is demonstrated below, an analysis of the substantive considerations set forth in *Grinnell*, as well as the absence of any evidence suggesting collusion between the

parties during settlement negotiations, overwhelmingly supports Petitioner's request that the Settlement Agreement be granted final Court approval.

## 1. The Complexity, Expense And Likely Duration Of The Litigation

In circumstances where the litigation would require expensive and time consuming discovery, would necessitate the use of several expert witnesses and would not be completed for years, such factors weigh heavily in favor of settlement approval. *In re Prudential Insurance Co. of America Sales Practices Litig*., 148 F.3d 283, 318 (3d Cir. 1998), cent denied sub nom., *Krell v. Prudential Insurance Co. of America Litig*., 525 U.S. 1114, 119 S. Ct. 890 (1999).

In this case, in the absence of settlement, the parties would be required to complete a lengthy and extensive merits discovery program, including expert discovery. It is expected that if settlement negotiations failed, that discovery could be expected to take at least another year. Numerous supervisors and others may have relevant information. Kodak might be expected to demand to take depositions of some or all of the 498 class members.

The trial of liability issues alone would run many weeks, perhaps months, and involve numerous attorneys, experts, the introduction of voluminous documentary and deposition evidence, vigorously contested motions and the expenditure of enormous amounts of judicial and financial resources. These expenses would undoubtedly cause an immense burden on any recovery obtained for the Class, contributing to significant delay that could deny the Class recovery for years. *Becher*, 64 F. Supp.2d at 181 ("Were the action to continue to be litigated, even if plaintiffs ultimately were successful, they could wait years before obtaining any relief ")

In addition to the expense incurred from further litigation, the fact that the Class will be required to prove a large portion of their case through the introduction of documentary evidence, significantly adds to the complexity and likely duration of this litigation. The introduction of documentary evidence is required to corroborate the testimony of class members and is necessitated by the absence of detailed time records clearly showing the actual number of hours worked by employees. Avoiding this unnecessary and unwarranted expenditure of resources as well as circumventing the inherent complexity of this case benefits all parties.

**2. The Reaction Of The Class To The Settlement**

The number or percentage of Class Members who object to, or opt out of, the settlement is often a factor of great significance in determining whether a settlement of a class action is fair and reasonable. See *Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); see also *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("[i]t is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks omitted). In fact, the lack of objections may well evidence the fairness of the settlement. *PaineWebber*, 171 F.R.D. at 126.

In this matter, objections had to be postmarked by October 5, 2009. No class members have submitted objections. Hannabury Aff. par. 46. There were, only 6 potential class members who opted out. Hannabury Aff., par. 47

Moreover Petitioners do not believe that opt outs, even as few as there were, has any negative implication on the fairness of the Settlement Agreement. Since this is an employment case, in petitioners experience it is likely that most or all of the opt outs

have more to do with the employment relationship rather than with any dissatisfaction with the terms of the settlement.

The reaction of the class members in this case is highly probative that the settlement is fair and reasonable.

### 3. The Stage Of The Proceedings And The Amount Of Discovery Completed

"[T]he stage of the proceedings and the amount of discovery completed" is a factor which the courts consider in determining the fairness, reasonableness and adequacy of a settlement. *In re Warner Communications Sec. Litig*., 618 F. Supp. 735, 741 (S.D.N.Y. 1985), affd, 798 F.2d 35 (2d Cir. 1986) (citation omitted).

Petitioners have conducted substantial discovery in this case regarding the viability of maintaining a class action and have progressed the litigation to the point where "[d]iscovery is fairly advanced and the parties certainly have a clear view of the strengths and weaknesses of their cases." *Warner Communications,* 618 F. Supp. at 745.

Petitioners and Defendant agreed on a discovery plan that consisted primarily of the provision of extensive electronic data pertaining to all of the individuals as well as a sample of data pertaining to perimeter the past data.. Hannabury Aff. pars 19-24.

In addition, the parties have previously submitted and vigorously contested motions pertaining to the substantive and procedural issues as well as to the enforceability of waiver and forfeiture agreements during the earlier portion of this litigation. Such extensive motion practice, along with the discovery already completed in this case, provided the parties with ample opportunity to familiarize themselves with the merits of their positions.  This familiarization of the issues concerning this litigation

supports a finding that the Settlement Agreement reached in this matter is fair and reasonable.  Hannabury Aff. pars. 25-43

## 4. The Risks Of Establishing Liability and Damages

In determining to settle this action, Petitioners have evaluated the extensive pre-trial investigation and have taken into account the substantial expense and length of time necessary to prosecute the action through trial, post-trial motions, and took into consideration the significant uncertainties in predicting the outcome of this complex litigation as against the Defendant.

The parties disagreed on both liability and damages and do not agree on the amount of damages that would be recoverable if Plaintiffs were to have prevailed on each claim alleged.

Plaintiffs' counsel considered that there was a substantial risk that Plaintiffs and the Class might not have prevailed on their claims and there were risks that ultimately, after motion practice, further litigation, trial and appeals, Plaintiffs could have recovered nothing from Kodak or substantially less than the Settlement amounts.

The substantive law presented substantial potential impediments to the class members recovering on their claims were this matter to go to trial.  Under the FLSA, employers must pay employees one-and-a-half times their  normal hourly rate for any hours worked over 40 in a given workweek. See 29 U.S.C. § 207(a)(1). However, the statute exempts from this requirement certain white-collar employees. Specifically, under 29 U.S.C. § 213(a)(1), Section 207 does not apply to "any employee employed in a bona fide executive, administrative, or professional capacity * * * (as such terms are defined

and delimited from time to time by regulations of the secretary * * *)." See *Spradling v. City of Tulsa*, 95 F.3d 1492, 1495 (10th Cir. 1996)

The primary, although by no means the only,  issue in this case is the applicability of the learned professional employees exemption to the technologists position as a whole and to the technologists individually. Petitioners believe that the technologists position was specifically set aside as a position that did not require learned professional qualifications.  As such, petitioners believe that the technologists was not a learned professional occupation and that Kodak could not take advantage of the learned professional exemption for any of the technologists.

Kodak, on the other hand took the position that it was not the nature of the technologist position *per se* that was the relevant inquiry.  Instead,  because of the widely divergent duties that that position comprised,  Kodak maintained that it was entitled to make an individualized inquiry as to each employee as to his status as a learned professional, or as some other type of exempt employee.

As a result of the settlement, we do not know how the court would decide the issue. The parties disagree as to the prevailing law. See generally., *Dingwall v. Friedman Fisher Associates*, P.C., 3 F. Supp. 2d 215, (N.D.N.Y.. 1998);*Schaefer v. Ind. Mich. Power Co*., 197 F. Supp. 2d 935 (W.D. Mich. 2002); Department of  Labor Opinion Letter FLSA2007-5; *Campbell v Pricewaterhousecoopers* (E.D. Ca. 2008) (CIV. S-06-2376 2008) (unreported); *Hashop v. Rockwell Space Operations Co*.  867 F. Supp. 1287 (S.D.Tex 1994)

Also, there is the question of proving unpaid overtime.  Under the relevant federal and New York wage laws, an employee's recoverable damages are limited to overtime

for hours worked more than 40 in a single workweek. Overtime is not calculated on a daily basis under the law. Kodak was required only to pay for overtime when an employee's total weekly hours exceeded forty.

Moreover, the law does not require payment of double time or payment of any premium for weekend work, or for working off schedule. In fact, the law entitles Kodak to a credit against claims for back pay for unpaid overtime for those extra premium hours that it voluntarily paid.

Bearing these principles in mind, counsel considered various issues, any one of which could have greatly affected the outcome of a trial of this action including the following:

A.  Whether all or some of the technologist were improperly classified.

B.  How much time people could prove that they actually worked over 40 hours in a single workweek. The paradox in cases where employers have not kept accurate time records, such as is alleged in this case, is that even though the burden shifts to a certain extent to the employer, the employee still must come forward with some evidence that it worked overtime. See, *Reich v. SNET Co*  892 F. Supp. 389 (D.C.Ct. 1995)  In this case, with a time period that reaches back more than 10 years, and a potential class size of hundreds of individuals who held a wide variety of different types of jobs, the difficulties of proof are formidable.  Petitioners believe that Petitioners could have tried the action based upon a combination of representative testimony, perimeter and internal gate pass data, payroll data, internal billing data and other information.  Unquestionably, however, it would have been difficult.  There is a real risk that the Court would have found that, given the numbers of people, and the disparate situations, that evidence could not be used

representatively and that instead each class member would have to come forward with their own individual proof of overtime hours for each year.  The settlement in avoiding this risk is of enormous benefit to the class.

**5. The Risks Of Maintaining The Class Action Through The Trial**

Further litigation of this matter would not serve the interests of the Class Members. There were many motions pertaining to threshold issues such as, the effect of Termination Allowance Plan (TAP) Agreements, the right to bring an action under the New York Minimum Wage Act, and the right to pursue it as a class-action.  All of these threshold issues were resolved in favor of the Plaintiff.  The loss on any one of these issues could have resulted in the effective end of the lawsuit.

As a result of the Settlement, Kodak will not appeal the Court's various orders in favor of the Plaintiffs in this case that have permitted this case to move forward as a class action, for example whether New York Minimum Wage Law claims can be brought as a class action at all.  Kodak may also  appeal the Court's rulings that theTAP  Agreements are not enforceable against employees in this case.

Petitioners believe that the Court was correct in all its rulings.  Nevertheless, there always remains a risk that the  this Court, or the Second Circuit, might rule differently on one or more of the threshold issues described in the previous paragraph. In the absence of settlement, absent class members would have to be informed of the Court's ruling and be afforded an opportunity to institute private litigation. Such private litigation would be both time-consuming and wasteful.

Moreover, further litigation could require each class member, to offer individualized evidence as to liability if the court adopts Kodak's view that the job must

be examined individually, and as to damages, and  the litigation costs associated with

such efforts would be very great. See, *In re GAIC Pick-Up Truck Fuel Tank Prods. Liab.*

*Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("[t]he law favors settlement, particularly in class

actions and other complex cases where substantial judicial resources can be conserved by

avoiding formal litigation.")

Further litigation would also result in a significant delay of eventual payments to

Class Members, if any.

Finally, the fact that no Class Members have lodged any objections to the

Settlement Agreement also demonstrates that the Class Members themselves feel that the

benefit of the instant settlement far outweighs the prospect of further litigation.

## 6. The Ability Of The Defendant To Withstand A Greater Judgment

The ability of defendants to withstand a greater judgment is often one of the

factors to be considered in determining whether or not to approve a settlement. However,

the fact that a defendant is able to pay more than it offers in settlement does not, standing

alone, indicate that the settlement is unreasonable or inadequate. *In re PaineWebber*, 171

F.R.D. at 129.

In the instant case, the factor should be deemed to be essentially irrelevant.  The

Petitioners have no way of knowing, Kodak's ability to pay a larger judgment. In any

event, the gross settlement of four million dollars represents a fair and reasonable

settlement of the claims in this action.

## 8. The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery

The range of reasonableness of the settlement fund in light of the best possible recovery is a difficult factor to measure in this case. Nevertheless, the Petitioners spent a great amount of time trying to assess the data that we obtained, and to evaluate it as a proxy for possible unpaid overtime for technologists during the relevant time period.

Petitioners made a detailed, if necessarily inexact, approximation of possible unpaid overtime with the data that Kodak presented. Because of the confidentiality of the data, petitioners cannot present the results here. Petitioners are prepared to submit a summary of those results to the court *en camera* if the court deems that necessary.

The total settlement amount is $4,000,000. In *Grinnell*, the Second Circuit noted that "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Grinnell*, 495 F.2d at 455. The Court further noted, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id*. at 455 n.2.

In this case, while Petitioners cannot, because of confidentiality, state the precise percentage, Petitioners can state that the $4 million is fair and reasonable when measured against the Petitioners' best estimate of the best possible recovery in this case.

**9. The Range Of Reasonableness Of The Settlement Fund In Light Of All The Attendant Risks Of Litigation.**

The enormous risks of litigation are why settlement is frequently preferred. Settlement avoids delay as well as uncertain outcome at summary judgment, trial and on appeal. The legal and factual difficulties inherent in this case, as described above, coupled with the unpredictability of a lengthy and complex trial, and the appellate process that would follow, with the risk of reversal, make the fairness of this substantial settlement readily apparent.

**C. The Negotiation Process by Which the Settlement Was Reached Also Supports Final Trial Court Approval**

In considering whether a class-action settlement is fair, reasonable, and adequate, "attention also has been paid to the negotiating process by which the settlement was reached." *Weinberger*, 698 F.2d at 74. Courts have looked to ensure that the settlement resulted from "arm's length negotiations" by plaintiffs' counsel possessed of "experience and ability" who "have engaged in the discovery, necessary to effective representation of the class's interests." *Id.*; *Grinnell*, 495 F.2d at 463-66.

In this case, counsel for both sides spent a great deal of time analyzing the data in order to piece together a picture of possible unpaid overtime since 1996.  There is certainly no history of collusion or of any other similar impediment to a finding that the settlement is altogether fair and reasonable.

**D**. **The Notice of Settlement Was Adequate and Satisfied Due Process Requirements.**

Federal Rule of Civil Procedure 23(c)(2) includes the requirement that individual notice to the Class be provided to those members "who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, (1974). In this case, due process requirements are satisfied by mailing to each current and former technologists class member a copy of the Settlement Notice to their last known address. The class action administrator, Rust Consulting, obtained addresses from Kodak, which maintains an updated database of current and former employees addresses. Hannabury Aff. par. 42.

Notice in a class action suit must be neutral and sufficient to alert prospective class members to the pendency and terms of the proposed settlement and to the options that are open to them in connection with the proceedings. *Handschu v. Special Services Div*., 787 F.2d 828, 832-33 (2d Cir. 1986). In addition, notice must be mailed to each class member who can be identified through reasonable effort. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).

In particular, for any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely states in plain, easily understood language:

(i) the nature of the action;

(ii) the definition of the class certified;

(iii) the class claims, issues, or defenses;

(iv) that a class member may enter an appearance through an attorney if the member

so desires;

> (v) that the court will exclude from the class any member who requests exclusion;

> (vi) the time and manner for requesting exclusion; and

> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

In this case, the content of the Settlement Class Notices and the Technologists Settlement Claim Forms  have been preliminarily ruled upon by the Court and they fairly apprised class members of the terms of the proposed settlement. See, *Weinberger*, 698 F.2d at 70. The notice of the settlement was fair, reasonable and adequate.


**E. The Court Should Approve The Proposed Plan Of Allocation**

"To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized -- namely, it must be fair and adequate." *In re MicroStrategy Inc. Sec. Litig*., 148 F. Supp. 2d 654, 668 (E.D. Va. 2001); see *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284-85 (9th Cir 1992).  An allocation formula need only have a reasonable, rational basis, particularly if recommended by "experienced and competent" class counsel. *White v. NFL,* 822 F. Supp. 1389, 1420-24 (D. Minn. 1993), aff'd, 41 F.3d 402 (8th Cir. 1994). See also I*n re Oracle Sec. Litig.*, 1994 U.S. Dist. LEXIS 21593, *3, No. C-90-0931-VRW (N.D. Cal. Jun. 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.").

The proposed Plan of Allocation, which was devised by experienced plaintiffs' counsel who are familiar with the relative strengths and weaknesses of the potential

claims of Class members, satisfies the same standards of fairness, reasonableness, and adequacy that apply to the overall settlement.

The proposed plan of allocation is a fair approximation of the concessions made by each side during settlement negotiations.  In particular, the allocation fairly approximates the risks involved, as described above,  of the class members not obtaining any benefit were the action to go to trial. Claimants are entitled to $100 a year, under Option 1, or to a percentage of the total amount available prorated by weeks of service since 1996 in salaried positions under Option 2.

The plan of allocation fairly requires class members for Option 2 to risk the possibility of adjudication of their claims before the Special Master, but permits class members for Option 1 to obtain substantial benefits with no information, documentation or proof.  The plan of allocation also permits Option 2 claimants to receive an Option 1 payment if the Special Master determines that they worked unpaid overtime but are exempt under an exemption other than the learned professional employees exemption.

The plan of allocation is fair and reasonable.

## VI. The Court Should Certify The Class For Settlement Under F.R.Civ.P. 23
### A. The Standard for Approval of a Settlement Class

F.R.Civ.P.  Rule 23(a), provides that a class action may be maintained if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

The court should certify the action.  All of the individuals had the same or similar job title, "Technologist."  The petitioners' primary allegation is that the technologist position did not require an advanced degree since most of the technologists did not have a four year degree, and a high proportion had no degree at all. Therefore, the Petitioner's position (with which Kodak adamantly disagrees) is that technologists were improperly classified whether or not some individuals were performing engineering work.  See, *Schaefer v. Ind. Mich. Power Co.*, 197 F. Supp. 2d 935  (W.D. Mich. 2002). Therefore, a class action is the best and most efficient way to assert the common claims.

1. Numerosity

Numerosity requires that the class include so many members that joinder would be impracticable. FED. R. CIV. P. 23(a)(I). "Impracticability" in this context means "'difficulty or inconvenience of joinder'" rather than "impossibility of joinder.'" *In re Indep. Energy Holdings,* 210 F.R.D. 476,479 (S.D.N.Y. 2002). Courts in this circuit generally "find a class sufficiently numerous when it comprises forty or more members." *Id.* (citing *Ribidoux* v. *Celani,* 987 F.2d 931, 936 (2d Cir. 1993).  The numerosity requirement is clearly satisfied here. In this case there are 498 class member. Many of them are former employees who are widely dispersed. A class of this size makes joinder of all members impracticable.

2. Commonality and Typicality

The commonality requirement is met if " there are questions of law or fact common to the class." F. R. Civ. P. 23(a)(2). Typicality requires that the claims of the named plaintiffs be typical of the claims of the class. FED. R. CIV. P. 23(a)(3). The requirements of Rule 23(a)(2) and (3) are often considered together. *See General Tele.*

*Co. o/Southwest* v. *Falcon,* 457 U.S. 147, 157 n.13 (1982); *Bolanos* v. *Norweigian Cruise Lines Ltd.,* 212 F.RD. 144, 155 (S.D.N.Y. 2002). "The crux of both requirements is to ensure that maintenance of a class action is economical and that the named plaintiffs' claims and the class claims are so interrelated that the interests of the Class Members will be fairly and adequately protected in their absence." *Id.*

The Class Representative's claims arise out the same alleged course of conduct and are based upon the same legal theories as those of the absent Class Members. Plaintiffs and the Class Members held a job position, technologist, which, plaintiffs allege, did not require an advanced degree of study. While Kodak disputes the substantive allegations, the common claim of misuse of the learned professional exemption is common, and typical to the class.

3. Adequacy of Representation

For the representation to be adequate, the parties seeking class certification must show that "the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). The requirement is met if two elements are established: "(1) the representative plaintiffs' attorneys must be qualified, experienced, and generally able to conduct the litigation, and (2) the plaintiffs' interests must not be antagonistic to those of the remainder of the class." Reade-Alvarez, 237 F.R.D. at 32 (citing In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285,291 (2d Cir. 1992)).

**a.  Plaintiff's Counsel Are Qualified**

The Class counsel are qualified and experienced lawyers in the who have vigorously pursued employment cases in this district and have vigorously advanced the rights of the Class Members in this case for over a seven years. Class counsel has

already obtained nearly $14 million in this case alone on behalf of the hourly employees.

Class counsel has conducted discovery, prepared numerous filings and memoranda, attended hearings, and have engaged in extensive, arduous settlement negotiations with Defendants. Further, Class Counsel stand ready, willing and able to devote the resources necessary to litigate this case vigorously and see it through to the best possible resolution, if the settlement is not approved.

**b.  Plaintiffs' Interests Do Not Conflict with the Interests of the Class**

Neither the Plaintiff nor his counsel has any interests that are antagonistic to those of the class members who now stand to benefit from the settlement.

**4. Predominance of Common Issues**

The Rule 23(b) predominance inquiry is satisfied "unless it is clear that individual issues will overwhelm the common questions and render the class action valueless. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 517 (S.D.N.Y. 1996). In determining whether common questions of law or fact predominate, the Court should determine if the various claims of the Plaintiffs are "sufficiently cohesive" to justify treating them all in one single judicial forum. *See* Amchem Products, Inc. v. Windsor, 521 U.S. 591. at 623(1997). "Classwide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *Bourlas,* 237 F.R.D. at 353 (citing *In re Visa CheckiMasterMoney Antitrust Litig.,* 280 F.3d 124, 132 (2d Cir. 2001)).

In this case, the predominance requirement is satisfied because, even though the class members had a variety of different job duties, the common issue of whether they were properly classified as learned professionals, notwithstanding the fact that plaintiffs alleged that the job did not require a four year degree,  is the predominate common issue in the case.

**5. A Class Action Is Superior to Other Available Methods for the Fair and Efficient Resolution of the Case**

Class actions are found to be the superior method of litigation "when the main objectives of Rule 23 are served, including "the efficient resolution of claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications. *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979).

In this case, class treatment is clearly superior to 498  individual cases being brought in state or federal courts. This is particularly true in this case because, since the New York Law overtime law incorporates federal law, the state and federal courts would, apparently, have to work out some way to synchronize their various rulings and findings. Obviously, if this were even possible, it is not nearly as practical as resolving all of the cases in a single class action.

**D. The Settlement Does Not Improperly Grant Preferential Treatment to the Named Plaintiffs or any Segment of the Class.**

The settlement "does not improperly grant preferential treatment to class representatives or segments of the class. *In re NASDAQ, 176 F.R.D. at 102*. Here, all Class members will be allocated settlement payments on a pro rata basis.

Under the settlement, Plaintiffs' counsel will apply for an incentive award of Twelve thousand dollars ($12,000), for Class Representative Bruno Dambrauskas as compensation for his efforts in prosecuting the litigation for the benefit of the Class. This is the same amount that the class representative in the hourly employees litigation received and it is plainly a fair and reasonable compensation for the efforts of the representative in bringing about this substantial settlement.

### E. The Settlement Does Not Provide Excessive Compensation for Plaintiffs' Counsel.

The settlement does not provide "excessive compensation for attorneys." MCL4th, § 21.632, at 414.The parties agreed that Plaintiffs will apply for an award of attorneys' fees in the amount of one-third of the common fund created, which will also be in full satisfaction for reimbursement of their reasonable costs and expenses.  An award of attorneys' fees of one-third of the common fund has been approved numerous times in this Circuit. See, e.g., *Strougo ex reI. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp.2d 254 (S .D.N.Y.2003) (awarding one-third of $1.5 million settlement fund); *In re Blech Sec. Litig*., No. 94 Civ. 7696, 2002WL 31720381, at *1 (S.D.N.Y. Dec. 4,2002) (33 1/3% of the settlement fund); *Adair v. Bristol Tech. Sys.,No*. 97 Civ. 5874, 1999 WL 1037878, at *3-4 (S.D.N.Y. Nov. 16, 1999) (attorneys' fees of 33% of the settlement fund plus expenses);  *Klein v. PDG Remediation, Inc., No*. 95 Civ. 4954,1999 WL 38179, at *3-*4 (S.D.N.Y. Jan. 28,1999) (stating that "33% of the settlement fund" "is within the range of reasonable attorney fees awarded in the Second Circuit"); *In re JWP Inc. Sec. Litig.*, 92 Civ. 5815, (S.D.N.Y. Jan. 24,1997) (33 .3% of settlement fund); *In re Columbia Sec. Litig*., 89 Civ. 6821, slip op. (S.D.N.Y. Feb. 15,1995) (33.3% of settlement fund);

*Cohen v. Apache Corp.*, 89 Civ. 0076, 1993 WL 126560, at * 1 (S.D.N.Y. 1993) (33.3% of settlement fund); *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320,326 (E.D.N.Y.1993 )(33.8% of the settlement fund); *In re Avon Prods. Inc., Sec. Litig.*, No. 89 Civ. 6216, 1992 WL14349768, at *3 (S.D.N.Y. Nov.6, 1992) ("The request for 30% is in line with numerous awards in this Court and elsewhere in recent litigation. "); *Greene v. Emersons Ltd., No.* 76 Civ. 2178, 1987 WL 11558, at *1-*2(S.D.N.Y. May 20,1987) (fees and expenses of 46.2% of the settlement fund).Plaintiffs counsel has assumed the entire risk and costs of this litigation on a contingency basis for many years and will continue to incur fees and costs in conjunction with the settlement process.

Class counsel has spent an enormous amount of time prosecuting this case and in achieving an exceptional result. The 33% fee is in line, or lower than several wage and hour cases in this. See for example. *Malcolm, et al. v Eastman Kodak Company*, Case No. 03-CV-6589T (W.D.N.Y. 2003)  (38.5%); *Frank v. Eastman Kodak* Co., 04-CV-6053(W.D.N.Y. 2004) (40%).

## VII. THE ATTORNEY'S FEES, COSTS, AND INCENTIVE AWARDS ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

### A.  INTRODUCTION

Petitioners also respectfully request that the Court approve the attorneys fees provision of the Settlement Agreement. The Settlement Agreement provides that 33% of the $4.000,000 settlement fund  will be designated as attorneys fees, costs and expenses and paid to Plaintiffs counsel. This is in payment for the services Petitioners have rendered in the instant action.  Petitioners have prosecuted this complex and expensive wage class action on a contingent fee basis.  They have expended enormous amounts of

time professional time.  From the outset, Petitioners  have proceeded at great risk against determined and vigorous opposition and have succeeded in obtaining an excellent result.

As discussed in greater detail above,  this Settlement represents a superior result and, subject to final Court approval, resolves this controversy with respect to most claims against Kodak by technologists. For the reasons addressed below, Petitioners respectfully request that the Court award them attorneys' fees in the aggregate amount of $1,320,000 representing  33%  of the Settlement Fund, and reimbursement of future potential out-of-pocket costs and expenses.

The Settlement was the result of vigorous efforts to prosecute the action and of lengthy negotiations with Kodak.. The action was originally commenced in 2002 after extensive research and investigation of potential claims against Kodak. Petitioners' efforts during the course of the hourly employees that information pertaining to the allegations that the technologists were not properly paid overtime.

It is noteworthy  that the case was not supported by an underlying government criminal or civil proceeding.  Instead, Petitioners litigated this case with their self-supporting ingenuity, creativity and legal skills. As such, Petitioners faced serious obstacles to prove Kodak's liability, and the fact and amount of damages. Nevertheless, despite Kodak's strenuous opposition and the existence of many serious legal and factual hurdles, a substantial recovery, and ongoing monitoring of overtime practices and procedures have been obtained on behalf of the Class.

For the reasons set forth herein, Petitioners respectfully submit that the attorneys' fees and expense reimbursement sought are fair and reasonable under the applicable legal

standards and, in light of the contingency risk undertaken and the result achieved, should be awarded by the Court.

**1. Applicable law Justifies the Award of a 33% Fee In this Case**

**a. The Percentage Measured Method Is The Preferred Method To Determine The Appropriate Fee.**

There is a consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery.*"  Maley v. Del Global Tech. Corp*., 186 F.Supp.2d 358, 370 (S.D.N.Y. 2002);  *In re Initial Pub. Offering Sec. Litig*., 2009 U.S. Dist. LEXIS 93162 (S.D.N.Y 2009)

In this case in particular, the amount of hours spent by petitioners would not be particularly useful in this case as a means for measuring fees for two reasons. First while petitioners have spent thousands of hours on this litigation, it is impossible to allocate the time spent on the original hourly class action, which have been compensated, but which also have benefited this action.

More importantly, much work is left to the done in this case. See, i.e *Michels v. Phoenix Home Life Mut. Ins. Co.*, 1997 N.Y. Misc. LEXIS 171  (Albany Cty. 1997) (stating that " In any event, the actual multiplier award effectively is less because the lodestar does not take into account the work still to be done by plaintiffs' counsel in the implementation of this settlement.")

 Petitioners are now only at the stage of receiving claims. Petitioners do not know how many claims will be contested by Kodak or how much time that process will take. Kodak could contest as many as 58 Option 2 claims. It is possible that Petitioners will expend a great deal of additional time finalizing this case to its ultimate conclusion.

Therefore, the percentage measured method is the appropriate method for analyzing the propriety of the attorneys fees in this case.

### b.  The Magnitude and Complexities of the Litigation

The size and difficulty of the issues in a case is a significant factor to be considered in making a fee award. *Prudential* Sec., 912 F. Supp. at 100. The paradox of this case, is the fact that Defendant's own alleged wrongdoing, their failure to maintain time records as required by law, made it difficult to make a case against the Defendant. Petitioners spent enormous amounts of time organizing and interpreting the gate pass data provided by Kodak in order to estimate the total unpaid overtime hours. This was a large and difficult task which, Petitioners believe, which ended up yielding a very significant benefit to the class.

### Risk of Litigation.

The risk of litigation is an important factor in determining a fee award as uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award. *Grinnell at* 470. As the Second Circuit recognized "despite the most rigorous and competent of efforts, success is never guaranteed." *I*d. at 471, Petitioners undertook to prosecute this action without an assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk.

Here, the inherent facts and circumstances of this case presented numerous and substantial hurdles to a successful recovery of unpaid wages. As previously mentioned, the absence of time records not only contributed to the complexity of this case, but also

presented a significant hurdle to successful litigation. In the absence of accurate time records that can easily corroborate and verify the claims of hours worked by employees, such claims can be disputed through the testimony of Defendant's managers and supervisors. Such testimony and the resultant credibility issues create a significant risk if this matter proceeded to trial. See, e.g., *Brunson v. The City of New York*, 2000 WL 1876910, at  (S.D.N.Y. Dec. 22, 2000) (Court awarded a 50% premium to class counsel due to difficulty presented by the risk of litigation where class counsel "faced significant obstacles in the lack of reliable means of verifying hours worked and tasks performed by individual plaintiffs."

Plaintiffs also faced substantial risk as described above with regard to threshold issues relating to class/collective action status, the viability of the New York State action, the enforceability of the Agreements under stated federal law, and other procedural issues.

Moreover, substantive law pertaining to critical issues relating to the technologists is unsettled. For example, we do not know how the court would have ruled on the predominate issue of whether or not the technologist position was a discrete job so that Kodak's failure to require an advanced degree rendered it hourly, or whether Kodak would have been able to litigate each individual's job independently.

 At any time during the litigation it is possible that an authoritative court could have issued a ruling that limited or eviscerated one or the other of  the classes' claims. For example, a Circuit Court that New York overtime claims are not appropriate for class-action treatment or that the severance agreement releases of overtime claims are not void under New York law.

Petitioners also faced Kodak's  uncertain financial future which could put any settlement or judgment the class obtained at risk.  See, Steven Smith," Kodak Calls Come Into Focus," RealMoney.com,  September 22, 2006. , Moody's Aims To Be Ahead On Defaults,  Jeffrey McCracken Wall Street Journal, March 10, 2009.

Moreover, this case was unlike, for example, a typical securities fraud case where some kind of a settlement is virtually assured.  Petitioners always believed strongly in this case.  However, Petitioners also always knew that there was a very real possibility that some or all of the case could be toppled at any time by a variety of different circumstances.  Accordingly, the risk of litigation should weigh quite heavily in favor of the Petitioner's request for the approval of attorneys fees provided for in the Settlement Agreement.

Additionally  there is another aspect to the risks of litigation factor that is rarely discussed but is that looms even larger than the risk of losing the case. That is the risk that plaintiffs class attorneys of  being sued for malpractice.  In this case, we believe that class attorneys have done an exemplary job and have produced an excellent result for the technologists. Nevertheless, that is not always adequate protection against massive potential liability. See,, for example  *Janik v. Rudy, Exelrod & Zieff*. 119 Cal. App. 4th 441, 2004

### c. The Risks of Maintaining the Class Action Through Trial

A primary risk going forward is that the court would not certify the action for trial given the number of different circumstances pertaining to each employee and the risks of establishing liability and damages as described above..  Petitioners believe that the case would have been appropriately certified for trial under a pattern or practice commonality

41

standard.  Nevertheless, this risk factor should certainly also weigh in favor of settlement. See, ie, In re *Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 321 (3d Cir. 1998)).

These risks were all well known by Petitioners at the time this action was filed. Nevertheless, while fully aware of these litigation risks, Petitioners  invested significant resources to bring this matter to a successful Settlement. The fee award should, therefore, reflect these risks.

**d   The Quality of Representation.**

The, successful prosecution of  these complex claims required the participation of skilled attorneys. The quality of Petitioners' work on this case was excellent and is ultimately reflected in the result achieved for the benefit of the Class. Thus, the attorneys handling this case are highly skilled and experienced in handling complex employment related matters.

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' counsel. *In. re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 -14-(C.D. Cal. 1977), *In re King Resources Co. Securities Litigation*, 420 F. Supp. 610 (D. Colo. 1976), *Arenson v. Board of Trade*, 372 F. Supp. 1349 (N.D. Ill. 1974). Plaintiffs were opposed in this litigation by skilled and respected counsel. Nixon Peabody LLP, is, of course, a national law firm with a well-known local reputation for vigorous advocacy in the litigation of complex civil cases in general and employment cases in particular.

The attorneys for the class in this case, Charles W. Rogers, and Mark Hannabury are experienced attorneys with varied backgrounds with a strong combination of litigation expertise and employment law expertise.  Hannabury Aff. par.57

From the outset, Petitioners engaged in a concerted effort against a vigorous defense. Through diligent efforts, Petitioners were able to develop a case that brought Kodak to the settlement table where there was a full evaluation of the merits and risks presented and ultimately, a settlement of the litigation on a favorable basis for the Class.

### e. The Requested Fee In Relation To The Settlement.

In this Circuit, the percentage of fees awarded in class actions typically range from 15% to 30% of the total fund, with many courts awarding well above 30% under appropriate circumstances. *Becher v. Long Island Lighting Company*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999), *In re In-Store Adver. Sec. Litig.*, 1996 U.S. Dist. Lexis 4281 (S.D.N.Y. April 4, 1996)(33% of the common fund), *In re SLM Intl. Inc. Sec. Litig., Master File No.* 94-Civ. 3327 (RLC) (S.D.N.Y. 1996)(33% of the common fund),  *Cohen v. Apache Corp.*, 1993 WL 126560 (S.D.N.Y. 1993) (33.33% of the common fund), *In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320 (E.D.N.Y. 1993) (33.8% of the common fund for $14.2 million fee), *In re Gulf Oil/Cities Service Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992) (30% of the common fund), *In re Allstar Inns Sec. Litig.*, 1991 WL 352491 (S.D.N.Y. Nov. 20, 1991) (35% of the common fund), *Eltman v.  Grandma Lee's Inc.*, 1986 WL 53400 at *9 (E.D.N.Y. May 28, 1986) (slightly less than 30% of the recovery), *In re New York City Mun. Sec. Litig.*, 1984 WL 2411, at *2 (S.D.N.Y. Mar. 28, 1984) (almost 33% of the recovery), *Greene v. Emersons, Ltd.*, 1987 WL 11558 (S.D.N.Y. May 20, 1987) (46.2% of the recovery), *John Vaszlavk, et al. v. Storage*

*Technology Corporation,* 2000 WL 1268824 (D. Colo. Mar. 9, 2000)(Attorneys Fees awarded in the amount of 30% of common fund in class action matter brought under the Age Discrimination in Employment Act and ERISA.)Petitioners believe that consideration of the results obtained, the prevailing circumstances and the applicable precedent justify an award of $33%. The requested fee is well within the range of reasonable fees awarded in this Circuit and well below other fees in overtime cases in this District. See for example. *Malcolm, et al. v Eastman Kodak Company*, Case No. 03-CV-6589T(P) (38.5%); *Frank v. Eastman Kodak* Co., 04-CV-6053 (40%).

**f. Public Policy Considerations**

In rendering awards of attorney fees, "the Second Circuit and courts in this district also have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation "*In re Sumitomo Copper Litigation*, 74 F.Supp.2d 393, 396 (S.D.N.Y. 1999). In this case, public policy considerations weigh heavily in favor of awarding Petitioners requested fee. The violations complained of are of long-standing duration.  Nevertheless, apparently no state or federal individual or governmental action has ever been brought against Kodak to correct these deficiencies.

Many courts have recognized that fee awards in cases such as this serve the dual purpose of encouraging representatives, acting as private attorney generals, to seek redress for damages and discourage future misconduct of a similar nature. *Dolgow v. Anderson*, 43 F.R.D. 472, 487 (E.D.N.Y. 1968) (citations omitted), reversed and remanded on other grounds, 438 F.2d 825 (2d Cir. 1970). Courts, therefore, look with

favor upon awarding attorney fees in class actions that "encourage the vigilance of private attorneys general to provide corporate therapy protecting the public investor who might otherwise be victimized." *Grace v. Ludwig*, 484 F.2d 1262, 1267 (2d Cir. 1973) cert denied, 416 U.S. 905, 94 S. Ct. 1610 (1974). Class actions in particular have been recognized as an invaluable safeguard of public rights. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809, (1985), *J.I. Case Co. v. Borak*, 377 U.S. 426, (1964). Here, the award of Petitioners ' requested fees will encourage the prosecution of similar claims and further a significant goal of public interest.

**2. The Attorneys Fees Are Fair And Reasonable Irrespective Of How Much Of The Funds Are Actually Claimed**

A great deal of processing will need to take place before it can be determined the total amount claimed from the fund.  Pursuant to the Settlement Agreement, Kodak may object to some or all of the Option 2 claims.  Therefore, it is not possible at this time to estimate the total payouts that will be made from either subclass funds

Petitioners believe that the attorneys fees are reasonable in this case irrespective of the amounts actually claimed. The Supreme Court has held that an award of attorney's fees in a class action is to be based on the total fund available to the class rather than the amount actually claimed, . See *Boeing Co. v. Van Gemert,* 444 U.S. 472, (1980). Attorneys fees have been upheld where they exceed the amount claimed when they are based upon the total amount committed by the defendant.  See, *Waters v. Int'l Precious Metals Corp*., 190 F.3d 1291 (11th Cir. 1999), *cert. denied*, 530 U.S. 1223, 147 L. Ed. 2d 265, 120 S. Ct. 2237 (2000) (Eleventh Circuit upheld a fee award of approximately twice the amount actually claimed by the class from the fund.)  It is also important to note that

in many class-actions the issue never arises at all because the mailings and claims process

takes place after final approval.

## B. PETITIONERS' EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED

Petitioners  incurred substantial expenses in the early part of this litigation which

have been reimbursed pursuant to the Hourly Employees Settlement agreement.

Petitioners have not incurred substantial expenses pursuing the Technologists class

litigation thus far. However, it is impossible to say what, may be incurred during the final

stages of this litigation including processing contested claims, if any.

The  Settlement agreement provides that all expenses which are incurred will be

included in the fee award and petitioners will not seek any further payment for fees or

expenses irrespective of subsequent activity processing the settlement of this case.

## C. THE INCENTIVE AWARD IS APPROPRIATE AND REASONABLE

The Settlement Agreement provides that technologist class representative, Bruno

Dambrauskas will receive an incentive payment in the amount of $12,000.  Hannabury

Aff. pars. 62. Mr.  Dambrauskas  provided invaluable assistance to the Petitioner in

compiling information pertaining to overtime  practices.  He provided information at the

very outset of the case without which it would be impossible to bring the case at all and

he conferred with the petitioners all through the course of the litigation offering

invaluable information and insights as to how to proceed. *Id*, par 63.

Moreover, Mr. Dambrauskas, is a former employees of the Defendant and has a

continuing relationship with Kodak pertaining to benefits.  This is a relationship that does

not exist in most class actions.  There exists a unique measure of risk for named

representatives who sue their current or former employers, at least where the former employer and the representative continue to have a relationship of some time. Id.

The incentive award  is reasonable in light of the risks assumed by the class representative  in assisting the class in obtaining this relief from their employer and former employer. See i.e. *Denney v. Jenkens & Gilchrist*, 2004 U.S. Dist. LEXIS 26041, No. 03 Civ. 5460, 2005 WL 388562, at *31 n.248 (S.D.N.Y. Feb. 18, 2005)*; RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2003 U.S. Dist. LEXIS 8239, No. 94 Civ. 5587, 2003 WL 21136726, at *2 (S.D.N.Y. May 15, 2003) (" $ 25,000 incentive award requested for [Plaintiff] is reasonable").

The Court should approve the incentive awards.

## VIII CONCLUSION

The court should approve the Settlement Agreement, the notification and settlement process and  provision for  attorneys fees, costs and the incentive award,  in their entirety.

Dated: October 19, 2009                Respectfully Submitted,


____/s/ Mark Hannbury_____

Mark Hannabury, Esq
Charles W. Rogers, Esq.
Attorney for the Plaintiffs
45 Exchange Street, Suite 825
Rochester, New York 14614
(585) 454-2338

TO:
Stephen J. Jones,  Esq.
Nixon Peabody LLP
Attorneys for Defendant Eastman Kodak Company
Clinton Square
P.O. Box 31051
Rochester, New York 14603
(585) 263-1000

*Submitted:* October 19, 2009